JUDGE COTE 13 CV 3007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THOMAS M. CURTIS,                                  :

                Plaintiff,         :        Case No. _____

    - v -                                        :

CENLAR FSB, d/b/a CENTRAL LOAN               :
ADMINISTRATION & REPORTING; CENLAR          :        **NOTICE OF REMOVAL**
AGENCY, INC., FEDERAL HOME LOAN             :
MORTGAGE CORPORATION; AMERICAN              :
SECURITY INSURANCE COMPANY; and             :
ASSURANT, INC.                                     :

           Defendants.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

RECEIVED
MAY 0 3 2013
U.S.D.C. S.D. N.Y.
CASHIERS

    PLEASE TAKE NOTICE that Defendant American Security Insurance Company

("American Security"), pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, files this Notice of

Removal of this case from the Supreme Court of the State of New York, in and for the County of

New York, in which court this case was commenced, to the United States District Court for the

Southern District of New York, being the district embracing the place where the case is pending.

In support of this Notice of Removal, American Security states the following:

**TIMELINESS OF REMOVAL**

    1.    Plaintiff commenced this action on or about April 4, 2013, by filing a Verified

Complaint (the "Complaint") in the Supreme Court of the State of New York, New York County

(a copy of the Complaint, along with all other papers served on American Security, is attached

hereto as **Exhibit 1**). The Complaint and Summons were served on American Security on April

9, 2013. *See* Affidavit of Service on American Security Insurance Company (State court docket

No. 5) (attached hereto as **Exhibit 2**).

    2.    By Stipulation dated April 25, 2013, Plaintiff, American Security and Defendant

Assurant, Inc. ("Assurant") agreed to adjourn and extend to May 18, 2013 the time for American

Security and Assurant to answer, move, or otherwise respond to the Complaint. *See* Stipulation, dated April 25, 2013 (attached hereto as **Exhibit 3**).

3.     This removal was effected within 30 days of service of the Complaint on American Security. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) (notice of removal is timely under 28 U.S.C. § 1446(b) if filed within 30 days after service of the Complaint).

4.     The consent of improperly joined defendants is not required for removal. *See, e.g.*, *Thompson v. Accent Capital*, 491 Fed. Appx. 264, 265 (2d Cir. 2012) (*citing* 28 U.S.C. § 1446(b)(2)(A))

5.     Nonetheless, Assurant, which has been improperly joined, consents to the removal of this case. *See* Declaration of Jessica Olich, ¶ 4 (**Exhibit 4**) ("Olich Declaration")

6.     The remaining named Defendants, Cenlar FSB, d/b/a Central Loan Administration & Reporting ("Cenlar FSB"), Cenlar Agency, Inc. ("Cenlar Agency"), and Federal Home Loan Mortgage Corporation ("Freddie Mac"), each consent to removal.

## DIVERSITY JURISDICTION

7.     At the time the Complaint was filed, at the time of removal, and at all intervening times, the Plaintiff, Thomas Curtis, was (and is) a resident and citizen of the State of New York. *See* Complaint, ¶ 1.

8.     At the time the Complaint was filed, at the time of removal, and at all intervening times, American Security was (and is) a corporation, organized under the laws of the State of Delaware, with its principal place of business in the State of Georgia. *See* Declaration of Ronald K. Wilson, ¶ 4 (**Exhibit 5**) ("Wilson Declaration"); Complaint, ¶ 7.

9.     At the time the Complaint was filed, at the time of removal, and at all intervening times, the Defendants Cenlar FSB and Cenlar Agency were (and are) citizens of the State of New

Jersey.  Complaint at ¶¶ 2-4.

10.    At the time the Complaint was filed, at the time of removal, and at all intervening times, the Defendant Freddie Mac was (and is) a citizen of the State of Virginia.  Complaint at ¶ 5.

11.    At the time the Complaint was filed, at the time of removal, and at all intervening times, Assurant, Inc. ("Assurant"), was (and is) a citizen of the State of New York.  Olich Declaration, ¶ 5.  As demonstrated below, Assurant has been improperly joined as a defendant. Therefore, Assurant's citizenship must be disregarded, and complete diversity of citizenship exists in this case.

12.    This Court has original jurisdiction over Plaintiff's claims, because the action presents a dispute between citizens of different States, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a)(1).

13.    Accordingly, this case is removable under 28 U.S.C. § 1441(a).

## ALLEGATIONS AND CLAIMS IN THE COMPLAINT

Plaintiff's Complaint alleges that:

14.    Plaintiff purchased a home in West Palm Beach, Florida, and, in connection therewith, executed a $200,000 note (the "Mortgage").  Complaint, ¶¶ 11-12.

15.    Freddie Mac has been the owner of the Mortgage, and Cenlar has been the servicing agent of the Mortgage, since 2009.  *Id.* ¶ 18 - 19.

16.    As of April 1, 2013, the outstanding principal balance of the Mortgage was $156,176.05.  *Id.* at ¶ 26.

17.    The Mortgage requires the borrower to maintain property insurance on the property "against loss by fire . . . and any other hazards."  *Id.* at ¶ 30.

18.    Plaintiff purchased a homeowners policy "excluding damage caused by wind."

*Id.* at 32.

19.     By letter dated October 18, 2012, Cenlar indicated to Plaintiff that the Mortgage documents "require you to maintain wind coverage as one of the hazard protections under your property insurance policy." *Id.* at 47.

20.     By letter dated November 8, 2012, Plaintiff indicated to Cenlar that he "rejected the demand for wind coverage and would sue Cenlar in the event Cenlar implements forced place coverage and seeks to charge it to plaintiff." *Id.* at ¶¶ 47, 53.

21.     By letter December 20, 2012, Cenlar indicated to Plaintiff that "if the hazard insurance you provide does meet our requirements, we may purchase hazard insurance beginning from this date." *Id.* at ¶ 56.

22.     On January 10, 2013, Cenlar sent another letter stating that the Plaintiff's policy "did not have wind coverage and that [Cenlar] had 'secured temporary Comprehensive Wind insurance coverage." *Id.* at ¶ 58.

23.     On February 14, 2013, Cenlar sent a letter notifying Plaintiff that it had placed Comprehensive Wind Insurance Coverage on the property. *Id.* at ¶ 66.

24.     Cenlar thereafter sent letters to Plaintiff, notifying him that the payments which were due under the Mortgage had been increased, due to the placement of the wind coverage. *Id.* at ¶¶ 67-69.   Plaintiff alleges that the annual premium for the coverage is $7,512.91. *Id.* at ¶ 72.

25.     The Plaintiff's first cause of action is against Cenlar and Freddie Mac and seeks a declaratory judgment that wind coverage is not required on the property. *Id.* at ¶¶ 73-83.

26.     The Plaintiff's second cause of action is against Cenlar and Freddie Mac and seeks an injunction, barring them from taking any action against plaintiff to hold him in default on the Mortgage. *Id.* at ¶¶ 84-85.

27.     The Plaintiff's third cause of action is against Cenlar and Freddie Mac and asserts

that their actions have "damaged plaintiff in an amount to be proven at trial but not less than $20,000.00." *Id*. at ¶¶ 86-87.

28.    The Plaintiff's fourth cause of action is against "All Defendants."

29.    As against American Security, the Plaintiff alleges that American Security "paid commissions or other remuneration" to Cenlar "in return for Cenlar directing its right to contract for property insurance on behalf of lenders pursuant to mortgage requirements to American Security." *Id* at. ¶ 90. Plaintiff alleges that the "cost of insurance [charged to him] is inflated by commissions and other remuneration paid to Cenlar." *Id*. at ¶ 96. Plaintiff alleges that the aforesaid acts constitute "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts, or practices" under Florida Statutes §501.204. *Id*. at ¶ 98.

30.    As against the improperly joined defendant, Assurant, Plaintiff alleges that American Security is a wholly owned subsidiary of Assurant. *Id*. at ¶ 10. Plaintiff alleges that "the business arrangement between Cenlar and/or Cenlar Agency and American Security was at all times relevant known to Assurant and ratified by it." *Id*. at ¶ 93. Plaintiff alleges that "the business arrangement between Cenlar and/or Cenlar Agency and American Security resulted in profits for Assurant." *Id*. at ¶ 94.

31.    The Plaintiff alleges in his fourth cause of action that the acts of all the defendants have caused plaintiff to be "damaged in an amount to be shown at trial but not less than $50,000." *Id*. ¶ 100.

32.    The Plaintiff's fifth cause of action is against "all defendants" and asserts violation of Florida Statutes §501.204, which, he alleges, entitles him to "reasonable attorneys fees and costs in accordance with Florida Statutes §501.2105." *Id*. at ¶¶ 101-02.

33.    On the basis of all his claims, Plaintiff seeks (i) declaratory and injunctive relief against Cenlar and Freddie Mac, prohibiting them from requiring Plaintiff to obtain wind

coverage and/or purchasing such coverage on Plaintiff's behalf; (ii) damages against all defendants in an amount to be proven at trial, but which is not less than $50,000; and (iii) attorneys fees and costs from all defendants. *Id*. at ¶ 103.

## FRAUDULENT OR IMPROPER JOINDER

34.     "[A] plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Whitaker v. American Telecasting, Inc*., 261 F.3d 196, 207 (2d Cir. 2001). "In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate. . . that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court." *Id.* (citation omitted).

35.     In this case, the in-state defendant, Assurant, has been improperly joined.  The sole allegations against Assurant are that it was American Security's parent corporation, that it "ratified" American Security's conduct (because it was aware of it); and that it profited from American Security's business.

36.     On the face of the Complaint, there is no independent conduct, let alone any described as wrongful, alleged on the part of Assurant.

37.     Plaintiff's Complaint also does not attribute to Assurant any wrongful act that was allegedly committed by American Security.  (Indeed, the only act of American Security about which Plaintiff complains is charging a price for the insurance that Cenlar allegedly purchased on Plaintiff's behalf that Plaintiff considers excessive.)

38.     The Complaint also fails to allege that Assurant operated American Security as its *alter ego* or in any way failed to observe and abide by the formalities of American Security's separate corporate existence.

39.     Under New York law, a parent corporation is not liable for the acts of its subsidiaries, solely by virtue of its ownership of the subsidiary.  *SUS, Inc. v. St. Paul Travelers Group*, 75 A.D.3d 740, 743, 905 N.Y.S.2d 321, 324-25 (N.Y. App. Div. 2010) ("liability can never be predicated solely upon the fact of a parent corporation's ownership of a controlling interest in the shares of its subsidiary")

40.     There is no possibility, based on the pleadings, that the Plaintiff can state a cause of action against Assurant in state court, and Assurant has thus been improperly joined.  *See, e.g.*, *Whitaker, supra.*

## AMOUNT IN CONTROVERSY

**A.     Compensatory Damages**

41.     Plaintiff seeks at least $20,000 in compensatory damages against Cenlar and Freddie Mac.  Complaint, ¶ 103.

42.     Plaintiff seeks at least $50,000 in compensatory damages against all defendants. *Id.*

43.     Plaintiff therefore seeks at least $70,000 in compensatory damages.

**B.     Declaratory and Injunctive Relief**

44.     "Where injunctive relief is sought, the value of the right protected or the injury avoided establishes the amount in controversy." *Lieb v. American Motors Corp.*, 538 F. Supp. 127, 134 (D.C. N.Y. 1982) (citing *Kheel v. Port of New York Authority*, 457 F.2d 46, 49, (2d Cir.), *cert. denied*, 409 U.S. 983 (1972).

45.     Plaintiff claims to have an insurable interest in the property of $496,780.00. Complaint at ¶ 44.  Plaintiff alleges that, as of April 1, 2013, the outstanding principal balance on his Mortgage is $156,176.05.  Complaint at ¶ 26.

46.     Plaintiff further alleges that the annual premium for the policy covering the

subject property, which was purchased by Cenlar and issued by American Security, is $7,512.91. Complaint at ¶ 72.

47.    Plaintiff seeks a declaratory judgment and injunctive relief which would prohibit American Security from receiving the annual premiums.   Complaint at ¶¶ 77-83.   American Security thus has a business expectancy in the amount of the annual premiums at stake with respect to Plaintiff's claims for declaratory and/or injunctive relief.

**C.    Penalties and Attorney's Fees**

48.    A court may take both attorney's fees and punitive damages into account when determining the amount in controversy. *See Ball v. Hershey Foods Corp.,* 842 F. Supp. 44, 47 (D.Conn.), *aff'd,* 14 F.3d 591 (2d Cir.1993).   Where both actual and punitive damages are recoverable, both must be included in determining the amount in controversy. *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943).

49.    The Complaint alleges violation of Florida Statutes § 501.204.   Florida Statutes § 501.2075 allows for a civil penalty of "not more than $10,000" for each violation of Florida Statutes §501.204. *Id.*

50.    Plaintiff also demands against all defendants "attorneys fees and costs in accordance with Florida Statutes § 501.2105." Complaint ¶ 102.   Florida Statutes § 501.2105 allows for the recovery of "the sum of reasonable costs incurred in the action plus a reasonable legal fee" for violations of § 501.204. *Id.*

51.    Assuming for purposes of this filing that all of the allegations of the Complaint in this case are true, and disregarding for purposes of this filing each and every defense of American Security and/or the other defendants, the Complaint places in controversy more than $75,000.00, exclusive of interest and costs.

## CONCLUSION

52.     For the foregoing reasons, this Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a)(1).

53.     Contemporaneously with the filing of this Notice of Removal, written notice has been served upon the Plaintiff and co-defendants through their counsel, and a copy of this Notice of Removal has been filed with the Clerk of the Supreme Court of the State of New York, in and for the County of New York.


Dated: New York, New York
       May 3, 2013

                                        SULLIVAN & WORCESTER LLP

                                        By: _____
                                        Andrew T. Solomon
                                        Karen E. Abravanel
                                        1633 Broadway, 32nd Floor
                                        New York, New York 10019
                                        Telephone: (212) 660-3000
                                        Facsimile: (212) 660-3001
                                        Email: asolomon@sandw.com
                                               kabravanel@sandw.com

                                        *Attorneys for Defendant American Security
                                        Insurance Company*

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------x
THOMAS M. CURTIS

                    Plaintiff,

              -against-

CENLAR, FSB, d/b/a CENTRAL LOAN
ADMINISTRATION & REPORTING, CENLAR
AGENCY, INC., FEDERAL HOME LOAN
MORTGAGE CORPORATION, AMERICAN
SECURITY INSURANCE COMPANY, and
ASSURANT, INC.

                    Defendants.
----------------------------------------x

Index No. 153072/13
DATE PURCHASED:
April 4, 2013


**SUMMONS**

Plaintiff designates New
York County as the place
of trial. The basis of
venue is plaintiff's
residence at 1385 York
Avenue, New York, NY 10021


TO THE ABOVE NAMED DEFENDANTS AND EACH OF YOU:

YOU ARE HEREBY SUMMONED to answer the Complaint in this action

and to serve a copy of your answer on the Plaintiff's Attorneys

within twenty days after the service of this Summons, exclusive of

the day of service, or within thirty days after completion of

service where service is made in any other manner than by personal

delivery within the State.

In case of your failure to appear or answer, JUDGMENT will be

taken against you by default for the relief demanded in the

Complaint. The basis for the venue designated is the residence of

plaintiff at 1385 York Avenue, New York, New York 10021.

Dated: New York, New York
       April 4, 2013

Yours, etc

LAW OFFICE OF THOMAS M. CURTIS

By: _____
       Thomas M. Curtis, Esq.
Attorneys for Plaintiff
1385 York Avenue, Suite 32-B
New York, NY  10021
Tel: (212) 734 4915

Defendants' addresses:

CENLAR, FSB
425 Phillips Boulevard
Ewing, New Jersey 08618

CENLAR AGENCY, INC.
425 Phillips Boulevard
Ewing, New Jersey 08618

FEDERAL HOME LOAN MORTGAGE CORPORATION
8200 Jones Branch Drive
McLean, Virginia 22102

AMERICAN SECURITY INSURANCE COMPANY
260 Interstate North Circle SE
Atlanta, Georgia 30339

ASSURANT, INC.
1 Chase Manhattan Plaza
New York, New York 10005

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------x
THOMAS M. CURTIS

              Plaintiff,

        -against-

CENLAR, FSB, d/b/a CENTRAL LOAN
ADMINISTRATION & REPORTING, CENLAR
AGENCY, INC., FEDERAL HOME LOAN
MORTGAGE CORPORATION, AMERICAN
SECURITY INSURANCE COMPANY, and
ASSURANT, INC.

              Defendants.
----------------------------------------x

Index No. 153072/13
DATE PURCHASED:
April 4, 2013

**VERIFIED COMPLAINT**

    Plaintiffs, by his attorneys, the Law Office of Thomas M. Curtis, as and for his verified complaint alleges as follows:

### THE PARTIES

    1. Plaintiff's primary residence and domicile is at 1385 York Avenue, New York, New York 10021.

    2.  Upon information and belief, defendant Cenlar, FSB ("Cenlar"), is a foreign corporation incorporated under the laws of the State of New Jersey with its principal office at 425 Phillips Boulevard, Ewing, New Jersey 08618.

    3.  Upon information and belief, defendant Cenlar does business under the assumed or fictitious name of Central Loan Administration & Reporting ("Central Loan").

    4. Upon information and belief, defendant Cenlar Agency, Inc. ("Cenlar Agency") is a wholly owned subsidiary of Cenlar sharing common office space and common officers with Cenlar.

    5. Upon information and belief, Cenlar Agency is registered

to do business in the State of New York and is the instrumentality through which Cenlar is authorized to do business in the State of New York.

6. Upon information and belief, defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") is a foreign corporation incorporated under the laws of the State of Delaware with its principal office at 8200 Jones Branch Drive, McLean, Virginia 22102.

7. Upon information and belief, defendant American Security Insurance Company ("American Security") is a foreign corporation incorporated under the laws of the State of Delaware with its principal office at 260 Interstate North Circle SE, Atlanta, Georgia 30339.

8. Upon information and belief, defendant Assurant, Inc. ("Assurant") is a foreign corporation incorporated under the laws of the State of Delaware with its principal office at 1 Chase Manhattan Plaza, New York, New York 10005.

9. Upon information and belief, American Security is a wholly owned subsidiary of Assurant.

10. Upon information and belief, Assurant is registered to do business in the State of New York and is the instrumentality through which American Security is authorized to do business in the State of New York.

### FACTS COMMON TO ALL CAUSES OF ACTION

11. On December 2, 2008, plaintiff purchased a second home

-2-

for personal occupancy located at 326 Kenilworth Boulevard, West Palm Beach, Florida 33405 ("326 Kenilworth").

12.   In connection with the purchase of 326 Kenilworth, on December 2, 2008, plaintiff executed a Note in the amount of $200,000.00 secured by a mortgage on 326 Kenilworth (the "Mortgage") given by NJ Lenders Corp., a corporation incorporated under the laws of the State of New Jersey with its principal office at 219 Paterson Avenue, Little Falls, New Jersey 07424.

13.   Plaintiff is the Borrower pursuant to the Mortgage.

14.   Upon information and belief, the Mortgage document conforms to the "Fannie Mae/Freddie Mac Uniform Instrument" as of the date thereof.

15.   Upon information and belief, the Note and Mortgage were assigned by NJ Lenders Corp. to Freddie Mac on or about January 21, 2009.

16.   Upon information and belief, the servicing of the Note and Mortgage was assigned by Freddie Mac to Taylor, Bean & Whitaker Mortgage Corp. on or about February 1, 2009.

17.   Alternatively, upon information and belief, the Note and Mortgage were assigned by NJ Lenders Corp. to Taylor, Bean & Whitaker Mortgage Corp. on or about February 1, 2009, and shortly thereafter the Note and Mortgage were assigned to Freddie Mac.

18.   Upon information and belief, Freddie Mac has been the owner of the Note and Mortgage since February, 2009, and continues to be the owner of the Note and Mortgage.

-3-

19.   Upon information and belief, Taylor, Bean & Whitaker Mortgage Corp. assigned or transferred its right to service the Note and Mortgage to Cenlar on or about August 12, 2009.

20.   Upon information and belief, Freddie Mac contracted with Cenlar to act as servicing agent for the Note and Mortgage on or about August 12, 2009.

21.   Upon information and belief, Cenlar has been the servicing agent for Freddie Mac since August 12, 2009 to the date hereof.

22.   Upon information and belief, Cenlar has had the right to collect payments from plaintiff on behalf of Freddie Mac since August 12, 2009, and continues to have such right.

23.   Plaintiff has timely paid all monthly payments of interest and principal due pursuant to the Note and Mortgage from December 2, 2008, to the date hereof.

24.   All monthly statements for payment of interest and principal have been mailed to plaintiff by Taylor, Bean & Whitaker Mortgage Corp. and thereafter by Cenlar to plaintiff's New York address.

25.   All payments by plaintiff required by the Note and Mortgage have been by check drawn on a New York account.

26.   As of April 1, 2013, the outstanding principal balance was $156,176.05.

27.   Plaintiff has timely paid all real estate taxes required to be paid pursuant to the Note and Mortgage.

28.   The Mortgage at Paragraph 16 provides that it "shall be governed by federal law and the law of the jurisdiction in which the Property is located."

29.   The Mortgage does not specify the venue for any claims arising out of the contract.

30.   The Mortgage at Paragraph 5 requires the Borrower to maintain property insurance stating in part as follows:

> Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term 'extended coverage,' and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.

31.   Plaintiff purchased and fully paid in advance a homeowners property policy with Lloyds of London in the amount of $250,000.00 for the period commencing December 2, 2008 and ending December 2, 2009 (the "Initial Policy" or the "Lloyds Policy" as the case may be).

32.   The Initial Policy was an all risk policy excluding damage caused by wind.  A copy of the declaration page and proof of prepayment for the policy year was provided to NJ Lenders Corp. on or about December 2, 2008.

33.   The Initial Policy was accepted by NJ Lenders Corp. as complying with the terms of the Mortgage.

34.   When plaintiff renewed the Initial Policy for the period December 2, 2009 through December 2, 2010, plaintiff forwarded to Cenlar an Acord Certificate showing property insurance in the amount of $255,000.00 and also showing that damage caused by wind

was excluded.

35.   A representative of Cenlar acknowledged receipt of the Acord Certificate for the period December 2, 2009 through December 2, 2010, by email dated December 9, 2009.

36.   Cenlar did not object to the lack of wind coverage.

37.   Plaintiff duly renewed the Lloyds Policy for the period December 2, 2010, through December 2, 2011, with an increase in the property coverage to $270,000.00 and fully paid for the same in advance.

38.   Proof of said insurance was timely provided to Cenlar which proof showed an exclusion for damage caused by wind.

39.   Cenlar did not object to the lack of wind coverage.

40.   Plaintiff duly renewed the Lloyds Policy for the period December 2, 2011, through December 2, 2012, and fully paid for the same in advance.

41.   Proof of said insurance was timely provided to Cenlar which proof showed an exclusion for damage caused by wind.

42.   Cenlar did not object to the lack of wind coverage.

43.   On April 25, 2012, plaintiff increased the property insurance to $389,000.00 plus $100,000.00 for other structures to cover the rear house on the property thereby increasing the property insurance to $489,000.00.

44.   The Lloyds Policy was renewed for the period December 2, 2012, through December 2, 2013, with an increase in the amount of property insurance to $396,780.00 plus $100,000.00 for other

structures to cover the rear house on the property thereby increasing the property insurance to $496,780.00 which policy was fully paid for in advance.

45. Proof of said insurance was timely provided to Cenlar.

46. An Acord Certificate for the period December 2, 2012, through December 2, 2013, showing evidence of property insurance naming Cenlar as Mortgagee is annexed hereto as Exhibit A.

47. By letter dated October 18, 2012, Cenlar demanded that wind coverage be added stating in part:

> As you know, the loan documents you signed at closing require you to maintain wind coverage as one of the hazard protections under your property insurance policy.

48. Plaintiff responded to Cenlar in writing on November 8, 2012, stating that wind coverage is not specifically required by the Mortgage and that the policy had been in place for nearly three years and accepted by Cenlar for that entire period. In fact, the letter contained a scriveners error because the Lloyds Policy had been in effect for nearly four years without complaints from Cenlar.

49. The letter also explained that the two houses had an exterior of hand laid "hard stucco with heavy wire reinforcing of the type used to reinforce concrete slabs set on a concrete base."

50. The letter further explained that the buildings have been standing since 1928 and survived several hurricanes, that this type of labor intensive construction is no longer used, and that wind coverage was prohibitively expensive only because the insurance

industry lumps the construction with ordinary frame buildings instead of masonry buildings.

51. The letter further advised Cenlar that the property was appraised on June 30, 2011 at $370,000 and relevant pages from the appraisal were enclosed with the letter.

52. The letter also advised Cenlar that if the two buildings were destroyed by wind the vacant land would be worth more than the then principal balance on the Mortgage which was less than $160,000.

53. The letter also advised Cenlar that "property insurance and taxes have always been paid in full" and that plaintiff rejected the demand for wind coverage and would sue Cenlar in the event that Cenlar implements forced place coverage and seeks to charge it to plaintiff.

54. Cenlar replied to plaintiff's November 8, 2012 letter by letter dated November 26, 2012 stating as follows:

> We are in receipt of your correspondence dated November 8, 2012 and have forwarded it to the investor, Freddie Mac, for review. Upon completion of their review you will be notified accordingly.

55. Plaintiff never received any correspondence indicating any review by Freddie Mac. Instead, plaintiff received a letter dated December 6, 2012 on Cenlar's letterhead from its "Insurance Processing Center" located in Florence, South Carolina, that my insurance policy was deficient in that it "excludes windstorm and/or hail insurance coverage, or excludes coverage for hurricanes, tornados or named tropical storms."

-8-

56.   On December 20, 2012, Cenlar sent another letter from its
"Insurance Processing Center" claiming that plaintiff's Lloyd's
Policy expired on December 2, 2012 and stating in part as follows:

> Your loan agreement requires you to maintain continuous
> hazard insurance coverage on your home, in an amount we
> require, and protects our interests.  If you fail to
> maintain hazard insurance effective from the date shown
> above, or fail to provide us with proof that you have
> hazard insurance, or if the hazard insurance you provide
> does not meet our requirements, we may purchase hazard
> insurance beginning from this date.  The amount of
> coverage we will obtain is based on the last known
> coverage amount you had in your previous hazard insurance
> policy, if available.

57.   Notwithstanding the claims of the December 20, 2012
letter, plaintiff had notified Cenlar of a renewal of the Lloyds
Policy from December 2, 2012, through December 2, 2013.

58.   On January 10, 2013, Cenlar sent another letter from its
"Insurance Processing Center" claiming that plaintiff's Lloyd's
Policy did not have wind coverage and that it had "secured
temporary Comprehensive Wind insurance coverage for the captioned
property in the form of a sixty-day binder" for $163,000 of
coverage at a premium of $5,990.25.

59.   By letter dated January 25, 2013, plaintiff replied to
Cenlar's "Insurance Processing Center" stating that "one part of
CENLAR does not know what other parts of CENLAR are doing or have
agreed to do" and enclosed with the letter copies of prior
correspondence with Cenlar's headquarters.

60.   In the letter dated January 25, 2013, plaintiff also
noted that the annual premium was absurdly high for wind coverage

"and indicates that the insurance is being placed with a company affiliated with Cenlar" and further stated that if such a premium were added to the mortgage statement plaintiff would add a fraud claim to the contemplated action against Cenlar and Freddie Mac.

61.  By letter dated February 7, 2013, Cenlar replied to plaintiff's letter dated January 25, 2013, stating that they would review the inquiry and "respond when our research has been completed."

62.  Four days later, on February 11, 2013, in an unsigned letter annexed hereto as Exhibit B, Cenlar's "Hazard Insurance Department" responded to plaintiff's letter dated January 25, 2013, stating that the Mortgage required plaintiff to "maintain insurance at all times to protect against an loss or hazards, including `extended coverage' such as windstorm, for the life of the loan."

63.  The letter further states as follows:

Some hazard policies have an inclusion of windstorm coverage.  <u>In coastal areas, Federal requirements allow for the exclusion of windstorm coverage from the hazard policy</u> (*emphasis added*).

64.  The letter then asserts that it is to "our mutual benefit that you maintain sufficient insurance pursuant to the terms of your mortgage, or we will obtain coverage at your expense" and that if they don't "receive evidence of your windstorm coverage we will purchase an insurance policy on your behalf and charge the premium for this policy to your account."

65.  By unsigned letter dated February 14, 2013, Cenlar's Insurance Department notified plaintiff that it had placed

Comprehensive Wind Insurance Coverage in the amount of $163,000 on plaintiff's property from November 18, 2012 to November 18, 2013 at a cost of $5990.25, demanded payment from plaintiff, and enclosed a purported sheet entitled "Evidence of Insurance."

66.  By unsigned letter dated February 26, 2013 styled as an "Annual Escrow Account Disclosure Statement", Cenlar notified plaintiff that his present payment of $1,568.59 for principal and interest would be increased by a one-twelfth monthly amount of $499.19, but also claimed a shortage of $8,985.36 and added $1,247.97 to plaintiff's present payment of $1,568.59 for a total new payment of $2,816.56.

67.  By a second unsigned letter dated March 7, 2013 styled as an "Annual Escrow Account Disclosure Statement", Cenlar notified plaintiff that his present payment of $1,568.59 for principal and interest would be increased by a one-twelfth monthly amount of $626.08, but also claimed a shortage of $10,871.11 and added $1,532.01 to plaintiff's present payment of $1,568.59 for a total new payment of $3,160.60.

68.  By unsigned letter dated March 11, 2013 entitled "Third Notice Requesting Hazard Insurance Information," Cenlar's Insurance Department stated that it had purchased hazard insurance on plaintiff's property at an annual premium of $7,512.91 and that the amount would be billed to plaintiff's escrow account.

69.  Enclosed with that March 11, 2013 letter was an insurance policy issued by American Security in the amount of $270,000 for

the period December 2, 2012 to December 2, 2013, notwithstanding
the fact that there was no damage to the property between December
2, 2012 and March 11, 2013 and the fact that there was in existence
a $496,780 policy with Lloyds.

70. Upon information and belief, the American Security policy
is actually inferior to the Lloyds policy due to its numerous
exclusions including a blanket exclusion for the second building on
the property which is covered by the Lloyds Policy.

71. By letter dated March 12, 2013, Cenlar responded to
plaintiff's letter of January 25, 2013, by asserting that the
mortgage required any insurance which the Lender requires, that the
Lender is Freddie Mac and quoted from requirements purportedly set
forth in Section 58.2 of Freddie Mac's Single Family Seller-
Servicer Guide.

72. The letter also claimed that Cenlar did not receive
evidence of a renewal of plaintiff's Lloyds Policy and therefore
had purchased a hazard insurance policy including wind coverage on
March 5, 2013 at a premium of $7,512.91 and cancelled the lender
purchased "windstorm" policy effective December 2, 2012, and
credited the imposed escrow account with "the unearned windstorm
premium of $5,762.40."

### FIRST CAUSE OF ACTION AGAINST
### DEFENDANTS CENLAR AND FREDDIE MAC

73. Plaintiff repeats and realleges the allegations of
paragraphs 1 through 72 inclusive as if more fully stated herein.

74. The Mortgage does not specifically require coverage for

-12-

damage due to wind as claimed by Cenlar acting on behalf of Freddie Mac.

75. Alternatively, by accepting the Lloyds Policy for nearly four years said defendants have waived any right to insist on coverage for damage due to wind.

76. In either event, said defendants do not have an insurable interest in excess of the remaining principal balance, namely $158,176.06.

77. Cenlar, as agent for Freddie Mac, has breached the Mortgage agreement by purchasing property insurance in excess of the principal balance of the Mortgage and charging the same to plaintiff.

78. Cenlar, as agent for Freddie Mac, has breached the Mortgage agreement by purchasing property insurance which duplicates plaintiff's property insurance and charging the same to plaintiff.

79. Cenlar, as agent for Freddie Mac, has breached the Mortgage agreement by purchasing property insurance which it allowed to be back dated for in excess of three months and charging the same to plaintiff.

80. By reason of the foregoing, plaintiff does not owe the amounts claimed by Cenlar and Freddie Mac.

81. Alternatively, in the event that this Court ultimately determines at trial that plaintiff is in default of the Mortgage for failure to purchase insurance for wind coverage then plaintiff

is ready, willing and able to purchase the same.

82.  By reason of the foregoing, there exists a justiciable controversy between the plaintiff and defendants Cenlar and Freddie Mac entitling plaintiff to a declaratory judgment pursuant to CPLR § 3001 declaring the rights and other legal obligations of plaintiff with respect to the insurance provisions of the Mortgage.

83.  By reason of the foregoing plaintiff requests that the court enter judgment declaring that plaintiff's property insurance evidenced by Exhibit A hereto complies with the requirements of the Mortgage.

**SECOND CAUSE OF ACTION AGAINST
DEFENDANTS CENLAR AND FREDDIE MAC**

84.  Plaintiff repeats and realleges the allegations of paragraphs 1 through 83 inclusive as if more fully stated herein.

85.  By reason of the foregoing plaintiff is entitled to a permanent injunction enjoining defendants Cenlar and Freddie Mac from taking any action to hold plaintiff in default of the Mortgage for failing to pay the insurance premiums for the property insurance policy purchased by said defendants.

**THIRD CAUSE OF ACTION AGAINST
DEFENDANTS CENLAR AND FREDDIE MAC**

86.  Plaintiff repeats and realleges the allegations of paragraphs 1 through 83 inclusive as if more fully stated herein.

87.  By reason of the foregoing, the acts of defendants Cenlar and Freddie Mac have damaged plaintiff in an amount to be proven at trial but not less than $20,000.00.

-14-

## FOURTH CAUSE OF ACTION AGAINST
## ALL DEFENDANTS

88.   Plaintiff repeats and realleges the allegations of paragraphs 1 through 83 inclusive as if more fully stated herein.

89.   Upon information and belief, the "Insurance Department" of Cenlar is in fact run by or staffed by American Security.

90.   Upon information and belief, Cenlar and/or Cenlar Agency are paid commissions or other remuneration by American Security in return for Cenlar directing its right to contract for property insurance on behalf of lenders pursuant to mortgage requirements to American Security.

91.   The placing of property insurance on behalf of borrowers who have failed to purchase insurance pursuant to the terms of a mortgage is generally described as force placed insurance.

92.   Upon information and belief, Cenlar and/or Cenlar Agency does no work in placing force placed insurance.

93.   Upon information and belief, the business arrangement between Cenlar and/or Cenlar Agency and American Security was at all times relevant known to Assurant and ratified by it.

94.   Upon information and belief, the business arrangement between Cenlar and/or Cenlar Agency and American Security resulted in profits for Assurant.

95.   The arrangement between Cenlar and American Security resulted in the cost of force placed insurance being billed to plaintiff.

96.   The actual cost of the insurance thus placed is inflated

by commissions and other remuneration paid to Cenlar and/or Cenlar Agency.

97.   The New York State Department of Financial Services has described the practice of paying lenders for force placed insurance as "reverse competition" where insurers compete for the business by "offering what is effectively a share in the profits."[1]

98.   The aforesaid acts of defendants constitute "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts, or practices in the conduct of any trade or commerce...." in accordance with Florida Statutes §501.204.

99.  As a result of the acts of defendants, plaintiff has been billed unconscionable amounts for force placed property insurance putting the Mortgage and the ownership of the property in jeopardy.

100.  By reason of the foregoing plaintiff has been damaged in an amount to be proven at trial but not less than $50,000.

### FIFTH CAUSE OF ACTION AGAINST
### ALL DEFENDANTS

101.   Plaintiff repeats and realleges the allegations of paragraphs 1 through 83 and 89 through 100 inclusive as if more fully stated herein.

102.  The aforesaid acts of defendants in violation of Florida Statutes §501.204 entitle plaintiff to reasonable attorneys fees and costs in accordance with Florida Statutes §501.2105.

---

[1] Press release by New York State Cuomo Administration dated March 21, 2013 and Consent Order with American Security Insurance referred to therein.

103.   By reason of the foregoing plaintiff seeks judgment for an amount equal to reasonable attorneys fees and costs to be added to damages otherwise obtained or in the event plaintiff is the prevailing party with respect to plaintiff's claim for a declaratory judgment.

Wherefore, plaintiff demands a final judgment against defendants as follows:

A.   On the first cause of action, judgment for plaintiff against Cenlar, FSB, and Federal Home Loan Mortgage Corporation declaring that plaintiff's property insurance evidenced by Exhibit A hereto complies with the requirements of the Mortgage.

B.   On the second cause of action, judgment granting plaintiff a permanent injunction enjoining defendants Cenlar, FSB, and Federal Home Loan Mortgage Corporation from taking any action to hold plaintiff in default of the Mortgage for failing to pay the insurance premiums for the property insurance policy purchased by said defendants.

C.   On the third cause of action, judgment for plaintiff against defendants Cenlar, FSB, and Federal Home Loan Mortgage Corporation in an amount to be proven at trial but not less than $20,000.00.

D.   On the fourth cause of action, judgment for plaintiff against all defendants in an amount to be proven at trial but not less than $50,000.00.

-17-

E.   On the fifth cause of action, judgment for plaintiff against all defendants for an amount equal to reasonable attorneys fees and costs to be added to damages otherwise obtained or in the event plaintiff is the prevailing party with respect to plaintiff's claim for a declaratory judgment.

and for such other and further relief as may be just and proper, together with interest as permitted by law and the costs and disbursements of this action.

Dated: New York, New York
      April 4, 2013

                      LAW OFFICE OF THOMAS M. CURTIS

                      By: _____
                        Thomas M. Curtis, Esq.
                      Attorneys for Plaintiff
                      1385 York Avenue, Suite 32-B
                      New York, NY  10021
                      Tel: (212) 734-4915

STATE OF NEW YORK )
                 ) ss.:
COUNTY OF NEW YORK)

      Thomas M. Curtis, being duly sworn, deposes and says:

      I am the plaintiff in the within action; I have read the foregoing complaint and know the contents thereof; the same is true to my own knowledge, except as to those matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true.

      The grounds of my belief as to all matters not stated upon my own knowledge are as follows:  records and documents currently in my possession, review of various files, and conversations with third parties.

                                      _____
                                      Thomas M. Curtis

Sworn to before me this
4/1 day of April, 2013

_____
Notary Public

                FELIPE PRADAS
                STATE OF NEW YORK
                NOTARY PUBLIC
                Qualified in Queens County
                #1PRA1669xx
                MY COMMISSION EXPIRES 06/18/2015

**EXHIBIT A**

**ACORD**

# EVIDENCE OF PROPERTY INSURANCE

OP ID: GB

DATE (MM/DD/YYYY) 04/01/2013

THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

| AGENCY PHONE (A/C, No. Ext): 516-746-4141 | COMPANY |
|---|---|
| The Whitmore Group, Ltd. 370 Old Country Road  Ste.200 Garden City, NY 11530 The Whitmore Group | Lloyds of London |

| FAX (A/C, No): 516-746-7875 | E-MAIL ADDRESS: | |
|---|---|---|
| CODE: | | SUB CODE: |
| AGENCY CUSTOMER ID #: CURTTO1 | | |

| INSURED | | |
|---|---|---|
| Thomas M. Curtis 1385 York Avenue, Suite 32B New York, NY 10021 | LOAN NUMBER 0031770340 | POLICY NUMBER QSRNJ20122699 |
| | EFFECTIVE DATE 12/02/12 | EXPIRATION DATE 12/02/13 | CONTINUED UNTIL TERMINATED IF CHECKED |
| | THIS REPLACES PRIOR EVIDENCE DATED: | |

**PROPERTY INFORMATION**

LOCATION/DESCRIPTION
326 Kenilworth Blvd
West Palm Beach, FL 33405

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

**COVERAGE INFORMATION**

| COVERAGE / PERILS / FORMS | AMOUNT OF INSURANCE | DEDUCTIBLE |
|---|---|---|
| HO Form: HO | | 1000 |
| A. Dwelling Amount | 396780 | |
| B. Other Structures Amount | 100000 | |
| D. Loss of Use Amount | 52000 | |
| E. Per Liab Ea Occ Amount | 500000 | |

**REMARKS (Including Special Conditions)**
Annual Premium $3,647.00

Wind Is Excluded

**CANCELLATION**

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

**ADDITIONAL INTEREST**

| NAME AND ADDRESS | X MORTGAGEE | ADDITIONAL INSURED |
|---|---|---|
| | LOSS PAYEE | |
| Cenlar,Central Loan Admn & Reporting ISAOA/ATIMA PO Box 202028 Florence, SC 29502 | LOAN # 0031770340 | |
| | AUTHORIZED REPRESENTATIVE James C Twirds | |

ACORD 27 (2009/12)

© 1993-2009 ACORD CORPORATION.  All rights reserved.
The ACORD name and logo are registered marks of ACORD

**EXHIBIT B**



**CENLAR**
CENTRAL LOAN ADMINISTRATION & REPORTING

February 11, 2013

Thomas M. Curtis
1385 York Avenue Apartment 32B
New York, NY 10021

Re: Loan Number      0031770340
Property Address:      326 Kenilworth Boulevard
                       West Palm Beach, FL 33405

**Response to Inquiry**

Dear Thomas M. Curtis:

This correspondence is in response to your correspondence that we received on January 31, 2013, about your insurance inquiry.

In your correspondence, you indicated that your mortgage agreement does not include a requirement for windstorm coverage. You also indicated that if it does it has been waived based on the acceptance of the same insurance policy for three years.

It is a requirement of your mortgage agreement that you maintain insurance at all times to protect against any loss or hazards, including "extended coverage" such as windstorm, for the life of the loan. The agreement stipulates that the lender reserves the right to secure coverage to protect their interest in the event coverage is not provided by the homeowner. Some hazard policies have an inclusion of windstorm coverage. In coastal areas, Federal requirements allow for the exclusion of windstorm coverage from the hazard policy. Should a hurricane or some other type of high winds damage or destroy your home, your hazard policy would not reimburse you for any damages that resulted from it. Therefore, it is our mutual benefit that you maintain sufficient insurance pursuant to the terms of your mortgage, or we will obtain coverage at your expense.

The cost of the lender placed insurance policy is likely to be significantly higher than the insurance that you could obtain on your own. This is because the policy that we purchase on your behalf is issued without evaluating the customary underwriting risks for the property (i.e., loss history, prior carrier history, plumbing and wiring updates, etc.). By obtaining your own windstorm insurance policy you can minimize your expense.

On October 18, 2012, our records were updated to show that your homeowner's insurance policy provided by Lloyds of London did not include windstorm coverage. We sent letters to you asking you to provide evidence of windstorm coverage. A temporary windstorm binder has been secured on your behalf. If you have windstorm insurance, please ask your agent to mail evidence of insurance to us at the address listed on page two. If we do not receive evidence of your windstorm coverage we will purchase an insurance policy on your behalf and charge the premium for this policy to your account.

Page 2
Thomas M. Curtis
February 11, 2013

Please ask your agent to send evidence of insurance annually to fax number (843) 413-7133, or mail to:

Central Loan Administration & Reporting
Its successors and/or Assigns, ATIMA
PO Box 202028
Florence, SC 29502-2028

Our goal is to provide the highest level of quality service. If you have further questions, please contact Customer Care at (866) 305-6949.

We apologize that we did not meet your expectations. We appreciate your business and value our relationship with you.

Sincerely,


Hazard Insurance Department

Index No.
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

———————————————————————————

THOMAS M. CURTIS

                    Plaintiff,

             -against-

CENLAR, FSB, d/b/a CENTRAL LOAN
ADMINISTRATION & REPORTING, CENLAR
AGENCY, INC., FEDERAL HOME LOAN
MORTGAGE CORPORATION, AMERICAN
SECURITY INSURANCE COMPANY, and
ASSURANT, INC.

                    Defendants.

———————————————————————————


**SUMMONS AND VERIFIED COMPLAINT**


———————————————————————————
———————————————————————————


        Signature (Rule 130-1.1-a)

    LAW OFFICE OF THOMAS M. CURTIS

    By: _____
            Thomas M. Curtis
        Attorneys for Plaintiff
    1385 York Avenue, Suite 32-B
        New York, NY  10021
        Tel: (212) 734 4915

# EXHIBIT 2

FILED: NEW YORK COUNTY CLERK 04/21/2013

INDEX NO. 153072/2013

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 04/21/2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

THOMAS M CURTIS

                         Plaintiff,                    CIVIL ACTION FILE

V.                                          NO. 153072/13

CENLAR, FSB d/b/a CENTRAL LOAN
ADMINISTRATION & REPORTING, et al

                         Defendant,

### AFFIDAVIT OF SERVICE

      PERSONALLY appeared before me, ROBERT P. RICE, the undersigned

officer duly authorized to administer oaths, first being duly sworn, on oath deposes and

states that he/she is a citizen of the State of Georgia and 21 years of age or older and is a party

having no interest in the above-styled case. Affiant further states that on

April 09, 2013, at 3:30pm, he/she served **American Security Insurance Company**

by serving copies of the below listed documents to Ann Abney, Legal Administrator

located at 260 Interstate North Circle, Atlanta, GA  30339,

DOCUMENTS: **Notice Of Commencement Of Action Subject To Mandatory Electronic Filing;
Summons And Verified Complaint.**

      Dated _4-12_____, 2013

                                      ROBERT P. RICE
                                      Process Server

Sworn to and subscribed before me,
on _4-12_____, 2013

_Cindy Darby_____ Notary Public

CINDY DARBY
MY COMMISSION EXPIRES
NOTARY
PUBLIC
MARCH 10, 2015
GWINNETT COUNTY, GEORGIA

# EXHIBIT 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------- X
.                                          :
THOMAS M. CURTIS,                          :
.                                          :
                        Plaintiff,         :        Index No. 153072/2013
.                                          :
        - against -                        :
.                                          :        **STIPULATION**
CENLAR, FSB, d/b/a CENTRAL LOAN            :
ADMINISTRATION & REPORTING, CENLAR         :
AGENCY, INC., FEDERAL HOME LOAN            :
MORTGAGE CORPORATION, AMERICAN             :
SECURITY INSURANCE COMPANY, and            :
ASSURANT, INC.,                            :
.                                          :
                        Defendants.        :
------------------------------------------- X

        IT IS HEREBY STIPULATED AND AGREED, by and among the undersigned

attorneys for Plaintiff and Defendants American Security Insurance Company and Assurant, Inc.

(collectively, the "Assurant Defendants"), that the time for the Assurant Defendants to answer,

move, or otherwise respond to Plaintiff's complaint in the above-captioned action is adjourned

and extended to May 17, 2013.

        Copies of this Stipulation shall be deemed originals for all purposes and this Stipulation

may be filed with the court without further notice.

Dated: April 25, 2013


_____          _____
Thomas M. Curtis                          Andrew T. Solomon
LAW OFFICE OF THOMAS M. CURTIS            Karen E. Abravanel
1385 York Avenue, Suite 32-B             SULLIVAN & WORCESTER LLP
New York, New York 10021                  1633 Broadway, 32nd Floor
Tel: (212) 734-4915                       New York, New York 10019
                                          Tel: (212) 660-3000

*Attorneys for Plaintiff Thomas M. Curtis*    *Attorneys for Defendants American Security*
                                              *Insurance Company and Assurant, Inc.*

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

THOMAS M. CURTIS,                                  )
                                                   )
        Plaintiff,                                 )
vs.                                                )        Case No.:
                                                   )
CENLAR FSB, d/b/a CENTRAL LOAN                     )
ADMINISTRATION & REPORTING;                        )
CENLAR AGENCY, INC., FEDERAL HOME                  )
LOAN MORTGAGE CORPORATION;                         )
AMERICAN SECURITY INSURANCE                        )
COMPANY; and ASSURANT, INC.                        )
                                                   )
        Defendants.                                )

## DECLARATION OF JESSICA OLICH

I, Jessica Olich, declare as follows:

1.      My name is Jessica Olich.  I make this declaration pursuant to the provisions of

28 U.S.C. § 1746.  The statements set forth herein are based upon my personal knowledge, or are

based upon a personal review of the corporate records and/or publicly available information of

Assurant, Inc. ("Assurant"), and information and/or records regarding American Security

Insurance Company ("American Security"), some of which was provided to me by other officers

of Assurant or by employees of American Security.

2.      I am over 21 years of age and competent to testify to the statements set forth

herein.

3.      I am a Vice President and Assistant Secretary of Assurant.  My business address

is One Chase Manhattan Plaza, 41st Floor, New York, New York 10005.

4.     I have reviewed the Verified Complaint filed in this case.  I make this declaration in support of American Security's Notice of Removal, insofar as Assurant has been improperly joined in this matter.

5.     I am familiar with the public company known as "Assurant, Inc.," which is a Delaware corporation whose shares trade on the New York Stock Exchange under the symbol AIZ, and whose principal place of business is New York, New York.

6.     Assurant is not an insurance company, and does not issue or underwrite insurance policies.

7.     Assurant does not collect premiums paid for insurance policies.

8.     Assurant does not contract with residential mortgage lenders and servicers to provide any products or services related to lender-placed insurance.

9.     Assurant does not pay, and has never paid, commissions to any residential mortgage lender or servicer related to lender-placed insurance.

10.    Assurant is American Security's indirect parent.  American Security's immediate parent is Interfinancial Inc., and Assurant is the immediate parent of Interfinancial Inc. American Security is a Delaware corporation with a principal place of business in Atlanta, Georgia.  American Security is an insurance company.

11.    Assurant is not involved in American Security's daily decisionmaking or business operations.  Assurant maintains separate books and corporate records from American Security. American Security generates its own business.

12.    Assurant does not participate in, direct, or control the placement, procurement, or binding of insurance policies that American Security issues, nor does Assurant set or participate

in setting the policy terms for insurance policies issued by American Security, including the coverage issued to protect plaintiffs' property.

13.     I declare under penalty of perjury that the foregoing is true and correct.


Executed on May 2 , 2013.


Jessica Olich

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

THOMAS M. CURTIS,                               )
                                                )
        Plaintiff,                              )
vs.                                             )        Case No.:
                                                )
CENLAR FSB, d/b/a CENTRAL LOAN                  )
ADMINISTRATION & REPORTING;                     )
CENLAR AGENCY, INC., FEDERAL HOME               )
LOAN MORTGAGE CORPORATION;                      )
AMERICAN SECURITY INSURANCE                     )
COMPANY; and ASSURANT, INC.                     )
                                                )
        Defendants.                             )

## DECLARATION OF RONALD K. WILSON

I, Ronald K. Wilson, declare as follows:

1.      My name is Ronald K. Wilson.  I make this declaration pursuant to the provisions of 28 U.S.C. § 1746.  The statements set forth in this declaration are based upon my personal knowledge and a personal review of the business records of Defendant American Security Insurance Company ("American Security"), and the Declaration of Jessica Olich filed in this case contemporaneously herewith.  I have reviewed the Verified Complaint in this case.

2.      I am the Vice President of Account Management with Assurant Specialty Property.  Assurant Specialty Property ("ASP") is a trade name and service mark used by American Security.  My business address is in Atlanta, Georgia.

3.      At the time the Verified Complaint was filed on or about April 4, 2013, at the time of removal, and at all intervening times, American Security was (and is) a corporation, organized under the laws of the State of Delaware, with its principal place of business in the State of Georgia.

4.      Assurant, Inc. ("Assurant") is American Security's indirect parent.  American Security's immediate parent is Interfinancial Inc., and Assurant is the immediate parent of

Interfinancial Inc.   American Security is a Delaware corporation whose principal place of business is Atlanta, Georgia.  American Security is an insurance company.

5.     Assurant is not involved in American Security's daily decisionmaking or business operations.  Assurant maintains separate books and corporate records from American Security.  American Security generates its own business.

6.     Assurant does not participate in, direct, or control the placement, procurement, or binding of insurance policies that American Security issues, nor does Assurant set or participate in setting the policy terms for insurance policies issued by American Security, including the policies issued to protect plaintiff's property.

7.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 2, 2013.

_____
Ronald K. Wilson

2