UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------- X
                                             :
THOMAS M. CURTIS,                            :
                                             :
                Plaintiff,                   :   Case No. 13-cv-3007-DLC
                                             :
        - v -                                :
                                             :
CENLAR FSB, d/b/a CENTRAL LOAN               :
ADMINISTRATION & REPORTING; CENLAR           :
AGENCY, INC., FEDERAL HOME LOAN              :
MORTGAGE CORPORATION; AMERICAN               :
SECURITY INSURANCE COMPANY; and              :
ASSURANT, INC.                               :
                                             :
                Defendants.                  :
-------------------------------------------- X


# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS ASSURANT, INC. AND AMERICAN SECURITY INSURANCE COMPANY


SULLIVAN & WORCESTER LLP
1633 Broadway
New York, New York 10019
(212) 660-3069

JORDEN BURT LLP
175 Powder Forest Drive
Suite 301
Simsbury, CT 06089
(860) 392-5000

*Attorneys for Defendants
Assurant, Inc. and American
Security Insurance Company*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................1

THE RELEVANT FACTS ..............................................................................................................3

ARGUMENT ...................................................................................................................................6

    I.       Applicable Legal Standards ........................................................................................6

    II.      Plaintiff Lacks Standing To Sue The Assurant Defendants.....................................7

           A.      The Filed Rate Doctrine Bars Claims Against the Assurant Defendants .......................................................................................................7

           B.      Assurant Did Not Cause Plaintiff's Alleged Injuries................................12

    II.      Plaintiff Fails To State A Claim Under Florida's Deceptive and Unfair Trade Practices Act ...................................................................................................13

CONCLUSION..............................................................................................................................14

i

# **TABLE OF AUTHORITIES**

**Federal Cases**                                                                                     **Page(s)**

*Antoine v. State Farm Mut. Auto. Ins. Co.*, 662 F. Supp. 2d 1318 (M.D. Fla. 2009) ....................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................................6

*Coll v. First Am. Title Ins. Co.*, 642 F.3d 876 (10th Cir. 2011)......................................................9

*Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392 (7th Cir. 2009)...................................................14

*Gibbs Props. Corp. v. CIGNA Corp.*, 196 F.R.D. 430 (M.D. Fla. 2000) .......................................12

*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009) ....................................................................................6

*Kiryas Joel Alliance v. Village of Kiryas Joel*, 495 Fed. App'x 183 (2d Cir. 2012) .................6, 13

*Kunzelmann v. Wells Fargo Bank, N.A.*,
    No. 11 Civ. 81373, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013)............................................7

*Luckett v. Bure*, 290 F.3d 493 (2d Cir. 2002) .................................................................................6

*McCray v. Fid. Nat'l Title Ins. Co.*, 682 F.3d 229 (3d Cir. 2012) ...................................................9

*MCI Telecomms. Corp. v. Best Tel. Co.*, 898 F. Supp. 868, 872 (S.D. Fla. 1994) ..........................8

*Morales v. Attorneys' Title Insurance Fund, Inc.*, 983 F. Supp. 1418 (S.D. Fla. 1997)..................8

*In re New Jersey Title Insurance Litigation*, 683 F.3d 451 (3d Cir. 2012) ....................................8

*Remy v. New York State Department of Taxation and Finance*, No. 11-1921, 2013 WL
    28362 (2d Cir. Jan. 3, 2013)...................................................................................................4

*Roberts v. Wells Fargo Bank, N.A.*,
    No. 12 Civ. 200, 2013 WL 1233268 (S.D. Ga. Mar. 27, 2013).......................................9, 13

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000).............................................................................4

*Servedio v. State Farm Insurance Co.*, 889 F. Supp. 2d 450 (E.D.N.Y. 2012) ..........................2, 8

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998)..........................................2, 13

*Taffet v. S. Co.*, 967 F.2d 1483, 1488 (11th Cir. 1992)..............................................................8, 12

*Uniforce Temp. Pers., Inc. v. Nat'l Council on Comp. Ins., Inc.*, 892 F. Supp. 1503
    (S.D. Fla. 1995) ......................................................................................................................9

*Wah Chang v. Duke Energy Trading & Marketing, LLC*, 507 F.3d 1222 (9th Cir. 2007)..............9

*Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17 (2d Cir. 1994) .....................................................8, 12

*Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218 (S.D. Fla. 2010) ......................................3, 14

**State Cases**

*Fla. Welding & Erection Serv., Inc. v. Am. Mut. Ins. Co.*, 285 So. 2d 386 (Fla. 1973) .................12

*Int'l Patrol & Detective Agency, Co., Inc. v. Aetna Cas. & Surety Co.*, 419 So. 2d 323 (Fla. 1982) ..............................................................................................................................12

*Porr v. NYNEX Corp.*, 230 A.D.2d 564, 660 N.Y.S.2d 440 (2d Dep't 1997) .................................8

*Woodham v. Williams*, 207 So. 2d 320, 322 (Fla. 1st DCA 1968) .................................................10

**Statutes and Rules**

Fed. R. Civ. P. 12................................................................................................................... passim

Fla. Stat. § 120.54 .........................................................................................................................12

Fla. Stat. § 501.212(4)(a) .........................................................................................................3, 14

Fla. Stat. § 624.01 .........................................................................................................................10

Fla. Stat. § 624.307 .......................................................................................................................11

Fla. Stat. § 624.310 .......................................................................................................................11

Fla. Stat. § 624.371 .......................................................................................................................12

Fla. Stat. § 626.951(1)...................................................................................................................14

Fla. Stat. § 626.9541(1)(o) ..............................................................................................................9

Fla. Stat. § 626.9561 .....................................................................................................................14

Fla. Stat. § 627.031 .......................................................................................................................10

Fla. Stat. § 627.062 .................................................................................................................10, 11

Fla. Stat. § 626.9561 .....................................................................................................................11

**PRELIMINARY STATEMENT**

Defendants American Security Insurance Company ("American Security") and Assurant, Inc. ("Assurant") (collectively, the "Assurant Defendants"), submit this Memorandum of Law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss the Verified Complaint (the "Complaint") for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted.

A.     **The Nature of the Case.**

The plaintiff in this action, Mr. Thomas M. Curtis, owns a home in Palm Beach, Florida (the "Curtis Property), subject to a mortgage currently held by defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") and serviced by defendants Cenlar FSB, d/b/a Central Loan Administration & Reporting ("Cenlar FSB"), and/or Cenlar Agency, Inc. ("Cenlar Agency") (collectively, "Cenlar").  The mortgage requires that Mr. Curtis maintain insurance against "any . . . hazard[s] . . . for which [Freddie Mac] requires insurance"; if Mr. Curtis fails to maintain such insurance, the mortgage authorizes the mortgage holder to purchase coverage on Mr. Curtis's behalf.

In October 2012, Cenlar notified Mr. Curtis that Freddie Mac "required" him to obtain wind coverage for his home.  Mr. Curtis refused to purchase such coverage, and in March 2013, Cenlar purchased a hazard insurance policy (the "Hazard Policy"), which included wind coverage, on his behalf.  (Cenlar had previously purchased a wind-only policy, but that policy was later canceled, and the premium was refunded before this action was commenced.)  The policy Cenlar purchased for Mr. Curtis was issued by American Security, an indirect subsidiary of Assurant.

Mr. Curtis asserts two different types of claims in his Complaint. First, he alleges that Cenlar and Freddie Mac wrongfully required Mr. Curtis to obtain wind coverage for his home in violation of the mortgage, and that they did so solely in order for Cenlar to receive a commission from American Security. Second, he alleges that the cost of the hazard insurance issued by American Security was "inflated." Compl. ¶ 96.

### B. The Assurant Defendants' Motion.

#### 1. Rule 12(b)(1).

Mr. Curtis seeks to recover money damages and attorneys' fees from the Assurant Defendants for having sold a policy whose "actual cost" was allegedly "inflated." Compl. ¶¶ 96, 100, 102. As set forth below, however, the rate that American Security charged for the Hazard Policy was calculated in accordance with rates that were filed with, and approved by, the Florida Office of Insurance Regulation (the "OIR").[1] Pursuant to the filed rate doctrine, "the value of the coverage [the plaintiff] obtained . . . was precisely equal to the premium he paid." *Servedio v. State Farm Mut. Ins. Co.*, 889 F. Supp. 2d 450, 453 (E.D.N.Y. 2012), *reconsideration denied*, No. 10-CV 1458 (FB), 2012 WL 6600317 (E.D.N.Y. Dec. 18, 2012). Consequently, the Complaint does not establish that Mr. Curtis suffered any "cognizable injury" that is traceable to the acts of the Assurant Defendants, *id.*, and he lacks standing to sue them. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).

Moreover, plaintiff's *only* allegations against Assurant are that it is a corporate parent of American Security, Compl. ¶ 10, that "the business arrangement between Cenlar . . . and American Security was . . . known to Assurant and ratified by it," *id.* ¶ 93, and that "the business

---

[1] Declaration of Rebecca H. Voyles in Support of Motion to Dismiss, executed on June 4, 2013 (the "Voyles Decl."), ¶¶ 5-6.

arrangement . . . resulted in profits for Assurant." *Id*. ¶ 94.  Thus, even if the acts of American Security caused Mr. Curtis to suffer a cognizable injury—and they did not—Mr. Curtis would still lack standing to sue Assurant.

### 2. Rule 12(b)(6).

Plaintiff's claims against the Assurant Defendants also fail on their merits.  The only claims Mr. Curtis purports to assert against the Assurant Defendants are alleged violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201–501.213 (2006) ("FDUTPA").  *See* Compl. ¶¶ 98, 102.  By its terms, the FDUTPA does not apply to "[a]ny person or activity regulated under laws administered by" the OIR.  Fla. Stat. § 501.212(4)(a).  Consequently, "FDUTPA does not apply to insurance companies," *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010), and Mr. Curtis fails to state a claim upon which relief can be granted.

## RELEVANT FACTS[2]

In 2008, Mr. Curtis purchased the Curtis Property in West Palm Beach, Florida, and executed a $200,000 note, secured by a mortgage on the House (the "Mortgage").  Compl. ¶¶ 11-12.  Freddie Mac is the current holder of the Mortgage, and Cenlar has been the servicing agent of the Mortgage since 2009.  *Id*. ¶¶ 18-19.  The Mortgage requires the plaintiff to maintain insurance on the House "against loss by fire . . . and any other hazards . . . for which [Freddie Mac] requires insurance."  *Id*. ¶ 30.

---

[2] Solely for purposes of the Assurant Defendants' motion pursuant to Rule 12(b)(6), the non-conclusory allegations of the Complaint are assumed to be true.

A.     **The Request for Wind Coverage.**

Also in 2008, Mr. Curtis purchased a homeowners policy that excluded coverage for damage caused by wind. *Id*. ¶ 32. Plaintiff renewed that policy each year thereafter. *Id*. ¶¶ 34, 37, 40. In October 2012, Cenlar sent Plaintiff a letter, stating that the Mortgage documents "require you to maintain wind coverage as one of the hazard protections under your property insurance policy." *Id*. ¶ 47. Plaintiff responded by letter dated November 8, 2012, in which he "rejected the demand for wind coverage and [stated that he] would sue Cenlar in the event Cenlar implements forced place coverage and seeks to charge it to plaintiff." *Id*. ¶¶ 48, 53.

By letter December 20, 2012, Cenlar expressly advised Mr. Curtis that, "if the hazard insurance you provide does not meet our requirements, we may purchase hazard insurance beginning from this date." *Id*. ¶ 56. The following month, Cenlar notified Mr. Curtis that it had secured temporary wind insurance coverage. *Id*. ¶ 58. That policy (the "Wind Policy") was issued by a company that is not a party to this action. Declaration of Ronald K. Wilson, executed on June 3, 2013 (the "Wilson Decl."), ¶¶ 10-11 and Ex. D.[3] It was subsequently canceled, and the premiums were refunded. Compl. ¶ 72; Wilson Decl. ¶ 12.

B.     **The Curtis Hazard Policy.**

In late 2012, Mr. Curtis permitted his existing hazard coverage to lapse. In a letter dated March 12, 2013, Cenlar advised Mr. Curtis that it had "purchased a hazard insurance policy including wind coverage on March 5, 2013." Compl. ¶ 72; *see also* Wilson Decl. Ex. G. That

---

[3]     With respect to the Assurant Defendants' motion under Rule 12(b)(1), the Court "may consider evidence outside the pleadings." *Remy v. New York State Department of Taxation and Finance*, No. 11-1921, 2013 WL 28362, at *1 (2d Cir. Jan. 3, 2013) (internal quotation marks omitted). The Court may also consider all the attached declarations and supporting documents without converting the Rule 12(b)(6) motion to one for summary judgment because plaintiffs possessed or relied on them in bringing their lawsuit. *See Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

policy (the "Hazard Policy"), issued by American Security, provided hazard insurance for the Curtis Property, including wind coverage, with limits of liability of $270,000, for the period from December 2, 2012 to December 2, 2013. Compl. ¶ 69; Wilson Decl. Ex. G. Plaintiff alleges that, in connection with the sale of the Hazard Policy, American Security paid Cenlar and/or Cenlar Agency "commissions or other remuneration." *Id.* ¶ 90. He asserts that "[t]he actual cost of the insurance thus placed is inflated by [such] commissions and other remuneration . . . ." *Id.* ¶ 96.

The annual total charged for the Hazard Policy was $7,512.91 (including a premium of $7,344.00 and applicable Florida assessments). *Id.* ¶ 72; Wilson Decl. ¶ 19. As explained in detail in the Wilson Declaration, this premium was calculated from premium rates that were filed with, and approved by, the OIR. Wilson Decl. ¶¶ 17-20; *see also* Declaration of Rebecca Voyles, executed June 4, 2013 (the "Voyles Decl."), ¶¶ 5-6. Furthermore, Mr. Curtis alleges that "wind coverage [is] prohibitively expensive only because the insurance industry lumps . . . [stucco] construction [like the House] with ordinary frame buildings instead of masonry buildings." Compl. ¶ 50.

      C.     **Assurant and American Security.**

American Security is an indirect subsidiary of Assurant. Declaration of Jessica Olich, executed June 4, 2013 (the "Olich Decl."), ¶ 10. Among other things, Assurant does not collect premiums paid for insurance policies. *Id.* ¶ 7. It does not pay, and has never paid, commissions to Cenlar or any other residential mortgage lender or servicer. *Id.* ¶ 9. Assurant is not involved in American Security's daily decision-making or business operations, and it maintains separate books and corporate records from American Security. *Id*. ¶¶ 10-11. Plaintiff's claims against Assurant are limited to allegations that Assurant knew of, and "ratified," the "business

arrangement between Cenlar . . . and American Security," and that the arrangement "resulted in profits for Assurant. *Id.* ¶¶ 93-94.

> D.     **Plaintiff's Claims.**

Plaintiff's First, Second and Third Causes of Action are asserted only against Cenlar and Freddie Mac. They assert that Cenlar, as agent for Freddie Mac, breached the Mortgage by purchasing the Curtis Hazard Policy, and they seek declaratory and injunctive relief and money damages. Plaintiff's Fourth and Fifth Causes of Action purport to assert claims against the Assurant Defendants, together with Cenlar and Freddie Mac. They seek money damages and attorneys' fees under the FDUTPA.

## ARGUMENT

I.     **Applicable Legal Standards**

*Rule 12(b)(1).* A case is properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) if the Court lacks the statutory or constitutional power to adjudicate it. *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002). In resolving a question of jurisdiction, the Court may refer to evidence outside the pleadings, and the plaintiff asserting subject-matter jurisdiction has the burden of proving that it exists by a preponderance of the evidence. *Id.* at 496-97.

Where a Rule 12(b)(1) motion is based on lack of standing, this burden of proof requires plaintiffs to allege "facts that affirmatively and plausibly suggest [that they] have standing to sue." *Kiryas Joel Alliance v. Village of Kiryas Joel*, 495 Fed. App'x 183, 188 (2d Cir. 2012).

*Rule 12(b)(6).* A motion to dismiss under Rule 12(b)(6) tests a complaint's legal sufficiency. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). In deciding the motion, the Court must apply a "plausibility standard" guided by two "working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, although "a court must accept as true all of the allegations contained

in a complaint," that tenet "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss," and determining whether a complaint states a "plausible" claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## II.   Plaintiff Lacks Standing To Sue The Assurant Defendants

The "irreducible constitutional minimum of standing" contains three requirements: (1) an injury in fact; (2) traceability (*i.e.*, a causal connection between the defendant's actions and the plaintiff's injury); and (3) redressability (*i.e.*, a likelihood that the requested relief will redress the alleged injury). *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).

### A.   The Filed Rate Doctrine Bars Claims Against the Assurant Defendants

In this case, Plaintiff claims that he was injured by virtue of having paid a premium for the Hazard Policy that was "inflated" by commissions American Security allegedly paid to Cenlar. Compl. ¶ 96. The premium for the Hazard Policy was calculated in accordance with rates that were filed with and approved by the OIR, and the "commissions" about which Plaintiff complains are included in the filed rate. Voyles Decl. ¶¶ 5-6; Wilson Decl. ¶¶ 17-20. Indeed, in a recent case, another federal court confirmed that American Security "is an 'admitted carrier' in 49 of the 50 states in the country," meaning "that its rates and all expense components of those rates – including the business acquisition/broker commission component – are filed with and approved or authorized by the insurance regulation offices in each of those 49 states." *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 11 Civ. 81373, 2013 WL 139913, *2 (S.D. Fla. Jan.

10, 2013).  "The commissions are included as a component of the insurance rates that are filed with state insurance regulators in each state."  *Id.*

The contours of the filed rate doctrine are well defined.  "Simply stated, the [filed rate] doctrine holds that any 'filed rate' – that is, one approved by the governing regulatory agency – is *per se* reasonable and unassailable in judicial proceedings brought by ratepayers."  *Wegoland, Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994); *Taffet v. S. Co.*, 967 F.2d 1483, 1488 (11th Cir. 1992).  The doctrine is "fully applicable to insurance premiums."  *Servedio v. State Farm Ins. Co.*, 889 F. Supp. 2d 450, 453 (E.D.N.Y. 2012).  Under the doctrine, a plaintiff who alleges injury based on his having paid "more than [his insurance coverage] . . . was worth" lacks standing, because the doctrine "establishes, as a matter of law, that the value of the coverage [the plaintiff] obtained . . . was precisely equal to the premium he paid."  *Id.*; *Porr v. NYNEX Corp.*, 230 A.D.2d 564, 566, 660 N.Y.S.2d 440, 442 (2d Dep't 1997) ("[A] consumer's claim, however disguised, seeking relief for an injury allegedly caused by the payment of a rate on file with a regulatory commission, is viewed as an attack upon the rate approved by the regulatory commission.  All such claims are barred by the 'filed rate doctrine'").

"At the core of the filed rate doctrine is the issue of standing."  *Morales v. Attorneys' Title Ins. Fund, Inc.*, 983 F. Supp. 1418, 1429 (S.D. Fla. 1997); *In re N.J. Title Ins. Litig.*, 683 F.3d 451, 461 n.7 (3d Cir. 2012) (paying "existing rates do[es] not constitute a cognizable legal injury under the filed rate doctrine]").

Florida's version of the filed rate doctrine is particularly robust.  Plaintiff has "no legal right to pay any rate other than the one established" by the OIR.  *Taffet*, 967 F.2d at 1494; *MCI Telecomms. Corp. v. Best Tel. Co.*, 898 F. Supp. 868, 872 (S.D. Fla. 1994) (the filed rate "exclusively controls the rights and liabilities of the parties as a matter of law").  Moreover,

exactly the same result is required by the Florida Insurance Code, which prohibits an insurer from "[k]nowingly collecting as *a premium or charge for insurance any sum … less than the premium or charge applicable to such insurance, in accordance with the applicable … rates as filed with and approved by the office*, and as specified in the policy." Fla. Stat. § 626.9541(1)(o) (emphasis added).  *See also*, *e.g.* *Uniforce Temp. Pers., Inc. v. Nat'l Council on Comp. Ins., Inc.*, 892 F. Supp. 1503, 1512 (S.D. Fla. 1995), *aff'd*, 87 F.3d 1296 (11th Cir. 1996) (dismissing claims concerning excessive rates based on the filed rate doctrine.); *Roberts v. Wells Fargo Bank, N.A.*, 2013 WL 1233268 (S.D. Ga. Mar. 27, 2013) (same); *Wah Chang v. Duke Energy Trading & Marketing, LLC*, 507 F.3d 1222 (9th Cir. 2007) (same).

When assessing the applicability of the filed rate doctrine, it is not plaintiffs' legal theory or "the underlying conduct … [that] control[s] whether the filed rate doctrine applies.  Rather, the focus for determining whether the filed rate doctrine applies is the impact the court's decision will have on agency procedures and rate determinations." *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 890 (10th Cir. 2011) (citation omitted); *Uniforce*, 892 F. Supp. at 1512 ("Claims for damages based on a rate other than the filed rate approved by the regulator are prohibited to '(1) preserve the regulating agency's authority to determine the reasonableness of rates; and (2) insure that the regulated entities charge only those rates that the agency has approved[.]'") (citation omitted); *McCray v. Fid. Nat'l Title Ins. Co.*, 682 F.3d 229, 242 (3d Cir. 2012) (applying filed rate doctrine to bar claims because to award damages the court would have to calculate the proper rate but for the alleged violations, the court is barred from undertaking the rate-setting task).

Application of the filed rate doctrine is appropriate here, because it advances "two corresponding interests, one concerned with potential 'discrimination' in rates as between

9

ratepayers and the other concerned with the 'justiciability' of determining reasonable rates[.]" *Wegoland,* 27 F.3d at 19. The latter strand requires that courts decline to "enmesh" themselves in the ratemaking process, to avoid disturbing the work of regulatory agencies which "are deeply familiar with the workings of the regulated industry and utilize this special expertise in evaluating the reasonableness of rates." *Id.* at 21. Under Florida law, insurance is a highly regulated industry, and the OIR is deeply familiar with its workings. *Woodham v. Williams*, 207 So. 2d 320, 322 (Fla. 1st DCA 1968); Fla. Stat. § 624.01 ("Chapters 624-632, 634, 635, 636, 641, 642, and 651 constitute the 'Florida Insurance Code.'").

The Florida Insurance Code specifically regulates premium rates for the insurance at issue here. *See* Fla. Stat. Ch. 627, Pt. I. The Insurance Code is intended "[t]o promote the public welfare by regulating insurance rates . . . to the end that they shall not be excessive, inadequate, or unfairly discriminatory." Fla. Stat. § 627.031. Aside from that statement of purpose, the Code specifically provides with regard to the insurance at issue here that "[t]he rates … may not be excessive, inadequate, or unfairly discriminatory." Fla. Stat. § 627.062. Insurers "must" file with the OIR "cop[ies] of rates, rating schedules, rating manuals, premium credits or discount schedules, and surcharge schedules, and changes thereto …." Fla. Stat. § 627.062(2)(a).

"Upon receiving a rate filing, the [OIR] shall review the filing to determine if a rate is excessive, inadequate, or unfairly discriminatory," and "[i]n making that determination, the [OIR] shall, in accordance with generally accepted and reasonable actuarial techniques, consider . . . [14 different] factors." Fla. Stat. § 627.062(2)(b). These factors include: "Past and prospective loss experience within and without [Florida]," "[p]ast and prospective expenses," "[t]he degree of competition among insurers for the risk insured," the "[i]nvestment income reasonably expected by the insurer" from investable premiums anticipated by the rate filing,

10

"[t]he reasonableness of the judgment reflected in the filing," "[t]he adequacy of loss reserves," "[t]he cost of reinsurance," "[c]onflagration and catastrophe hazards," "[p]rojected hurricane losses," "[a] reasonable margin for underwriting profit and contingencies," and "[o]ther relevant factors that affect the frequency or severity of claims or expenses." Fla. Stat. § 627.062(2)(b)1-14.

After the OIR has considered all of the rate factors provided in § 627.062(2)(b), (c) and (d), it "may find a rate to be excessive, inadequate, or unfairly discriminatory based upon . . . [any of 6 different] standards." Fla. Stat. § 627.062(2)(e). Among other considerations, "[r]ates shall be deemed excessive if they are likely to produce a profit from Florida business which is unreasonably high in relation to the risk involved in the class of business or if expenses are unreasonably high in relation to services rendered." Fla. Stat. § 627.062(2)(e)1. The OIR may review premium rates, rating schedules, rate changes, the insurer's records, and market conditions "at any time," and, if it "finds on a preliminary basis that a rate may be excessive, inadequate, or unfairly discriminatory, the [OIR] shall initiate proceedings to disapprove the rate . . . ." Fla. Stat. § 627.062(2)(g). Furthermore, with regard to property and casualty insurance (which includes the Hazard Policy), the OIR "may not directly or indirectly . . . [p]rohibit any insurer from paying acquisition costs . . . or prohibit any such insurer from including the full amount of the acquisition costs in a rate filing." Fla. Stat. § 627.062(2)(i)1.

Florida's Insurance Code also empowers the OIR to enforce its provisions. *See, e.g.,* § 624.307 ("The department and office shall enforce the provisions of this code ...."); § 626.9561 ("The department and office shall each have power … to examine and investigate the affairs of every person involved in the business of insurance in this state"); § 624.310 (empowering department to initiate lawsuits or other legal proceedings, issue cease and desist orders, hold

11

hearings in accordance with the Administrative Procedure Act, and order corrective action by insurers to remedy past improper conduct); and § 627.371 (authorizing department to receive written complaints from "[a]ny person aggrieved by any rate charged"; to conduct an examination of the insurer; and to order the insurer to comply with the Code including, if necessary, the adjustment of the premium).[4]

In sum, "[t]he insurance industry is heavily regulated in Florida and its pricing is carefully governed by the [OIR]." *Gibbs Props. Corp. v. CIGNA Corp.*, 196 F.R.D. 430, 438 (M.D. Fla. 2000). The premium plaintiff paid for the Hazard Policy was precisely what was required under the filed and approved rates, Wilson Decl. ¶¶ 17-20, and as such was "*per se* reasonable and unassailable," *Wegoland*, 27 F.3d at 18. Mr. Curtis has "no legal right to pay any rate other than the one established" by the OIR. *Taffet*, 967 F.2d at 1494. Mr. Curtis did not suffer a cognizable injury by paying a filed rate, and he lacks constitutional standing to bring his claims. Plaintiff's claims against the Assurant Defendants, Counts Four and Five of the Complaint, should be dismissed.

### B. Assurant Did Not Cause Plaintiff's Alleged Injuries.

Mr. Curtis also lacks standing to assert any claims against Assurant. As noted above, plaintiff must allege "facts that affirmatively and plausibly suggest [he has] standing to sue,"

---

[4] Section 627.371 provides Plaintiff with a clear administrative remedy and represents the exclusive manner of challenging insurance rates and premiums. *Int'l Patrol & Detective Agency, Co., Inc. v. Aetna Cas. & Surety Co.*, 419 So. 2d 323, 324 (Fla. 1982), *approving and adopting*, 396 So. 2d 774 (Fla. 1st DCA 1981); *Fla. Welding & Erection Serv., Inc. v. Am. Mut. Ins. Co.*, 285 So. 2d 386, 389-90 (Fla. 1973) ("Where an administrative remedy is provided by statute, relief must be sought by exhausting this remedy before the courts will act."). Moreover, as noted in *Morales*, 983 F. Supp. at 1426 n.16, "rule making in Florida is governed by the Administrative Procedure Act, Fla. Stat. § 120.54," which includes "elaborate requirements pertaining to public notice and the right to be heard prior to the adoption of rules," such as those governing Florida's insurance rates.

*Kiryas Joel Alliance*, 495 Fed. App'x at 188, and standing requires a causal connection between the defendant's alleged actions and the plaintiff's alleged injury. *Steel Co.*, 523 U.S. at 103. In this case, there is no connection whatsoever between Assurant's alleged actions and Plaintiff's alleged injury.

Here, Assurant did not issue the Hazard Policy, and the Complaint does not allege that it does. *See* Olich Decl. ¶ 6; Wilson Decl. Ex. G. "[Assurant] is a mere holding company, a corporation designed only to own other corporations and profit from that ownership." *Roberts* 2013 WL 1233268, at *7. Assurant does not collect premiums paid for insurance policies. Olich Decl. ¶ 7. The Complaint does not allege otherwise. Assurant does not pay, and has never paid, commissions to Cenlar or any other residential mortgage lender or servicer. *Id*. ¶ 9. The Complaint does not allege otherwise. Assurant is not involved in American Security's daily decision-making or business operations, and it maintains separate books and corporate records from American Security. *Id*. ¶¶ 10-11. The Complaint does not allege otherwise.

In short, there is no connection whatsoever between Assurant and plaintiff's alleged injury, and there is no Article III case or controversy between plaintiff and Assurant. *See Roberts v. Wells Fargo Bank, N.A.*, No. 12 Civ. 200, 2013 WL 1233268, at *5-8 (S.D. Ga. Mar. 27, 2013) (dismissing Assurant for lack of subject-matter jurisdiction from suit similarly challenging lender-placed insurance practices). Plaintiff's Fourth and Fifth Causes of Action should be dismissed.

### III.     Plaintiff Fails to State a Claim Under The FDUTPA

Plaintiff's Complaint purports to assert claims against the Assurant Defendants under a single theory: alleged violation of the FDUTPA. Compl. ¶¶ 98, 102. The FDUTPA claims fail as a matter of law, because the FDUTPA expressly *precludes* claims against insurance companies and claims involving insurance activities. By its terms, the FDUTPA does not apply

to "[a]ny person *or* activity regulated under laws administered by" the OIR, which reports to Florida's Financial Services Commission. Fla. Stat. § 501.212(4)(a) (emphasis added). "As such, FDUTPA does not apply to insurance companies." *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010).

The Complaint alleges that the Assurant Defendants are insurance companies engaged in unfair and deceptive insurance practices.[5] However, the OIR comprehensively regulates "*all* such practices in [Florida] which constitute unfair methods of competition or unfair or deceptive acts or practices." Fla. Stat. § 626.951(1) (emphasis added); *see also* § 626.9561 (vesting authority in the OIR to enforce laws against unfair and deceptive insurance practices). And because plaintiffs' allegations concern *both* regulated companies *and* regulated insurance activities, the FDUTPA claims should be dismissed as to the Assurant Defendants. *See Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397 (7th Cir. 2009) (rejecting FDUTPA claim against insurance company); *Zarrella*, 755 F. Supp. 2d at 1227 (same); *Antoine v. State Farm Mut. Auto. Ins. Co.*, 662 F. Supp. 2d 1318, 1326 (M.D. Fla. 2009) (same).

## CONCLUSION

For all the foregoing reasons, the Assurant Defendants respectfully move for an order dismissing, with prejudice, the Fourth and Fifth Causes of Action from the Complaint, insofar as they purport to state claims against the Assurant Defendants, and granting such other and further relief as may be just and equitable.

---

[5] The OIR's Internet site confirms that American Security is an insurance company licensed to transact business in Florida. *See* Fla. Office of Ins. Reg., *Company Directory* (last visited April 23, 2013)  http://www.floir.com/CompanySearch.

Dated: New York, New York
June 7, 2013

By: /s/ Andrew T. Solomon
SULLIVAN & WORCESTER LLP
Andrew T. Solomon
Karen E. Abravanel
1633 Broadway
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

JORDEN BURT LLP
Robert D. Helfand
175 Powder Forest Drive
Suite 301
Simsbury CT 06089
Telephone: (860) 392-5000
Facsimile: (860) 392-5058

*Attorneys for Defendants American Security Insurance Company and Assurant, Inc.*

15