IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS M. CURTIS, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | ECF Case No. 13-cv-3007 |
| ) | |
| CENLAR FSB, d/b/a CENTRAL LOAN ) | |
| ADMINISTRATION & REPORTING; ) | |
| CENLAR AGENCY, INC., FEDERAL HOME ) | |
| LOAN MORTGAGE CORPORATION; ) | |
| AMERICAN SECURITY INSURANCE ) | |
| COMPANY; and ASSURANT, INC. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION TO REMAND**

                                            SULLIVAN & WORCESTER LLP
                                            1633 Broadway
                                            New York, New York 10019
                                            (212) 660-3069

                                            JORDEN BURT LLP
                                            175 Powder Forest Drive
                                            Suite 301
                                            Simsbury, CT 06089
                                            (860) 392-5000

                                            *Attorneys for Defendants*
                                            *Assurant, Inc. and American*
                                            *Security Insurance Company*

Dated: New York, New York
           July 5, 2013

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND.................................................................................................1

ARGUMENT..........................................................................................................................2

      A.      The Court Has Subject Matter Jurisdiction Over This
             Action Under 12 U.S.C. §1452(F)(2) And 28 U.S.C. §1331...................................2

      B.      Because Assurant Has No Real Connection to the Action,
             There is Complete Diversity Between the Parties......................................................4

CONCLUSION.....................................................................................................................10

i

## TABLE OF AUTHORITIES

**Federal Cases**                                                                     **Page(s)**

*Adair v. Lease Partners, Inc.*, 587 F.3d 238, 241 (5th Cir. 2009) ..................................................3

*Barash v. Ford Motor Credit Corp.*, No. 06-CV-6497 (JFB)(ARL), 2007 WL 1791656 (E.D.N.Y. June 20, 2007) ...................................................................................................8

*Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011) .........................................................4

*Carrion v. 605 Realty Assocs. Ltd. Partnership*, No. 02 Civ. 2166(DC), 2004 WL 1562815 (S.D.N.Y. July 13, 2004) ..................................................................................3

*Citibank (South Dakota) N.A. v. National Arbitration Council, Inc.*, No. 3:04-CV-1076-J-32MCR, 2007 WL 1231836 (M.D. Fla. April 26, 2007) ...........................................8

*Dunlop v. City of New York*, No. 06-CV-433(KMK)JCF, 2006 WL 2853972 (S.D.N.Y. Oct. 4, 2006) ...................................................................................................3

*Federal Home Loan Mtge. Corp. v. 333 Neptune Ave. Ltd. Partnership*, 201 F.3d 431 (2d Cir. 1999) ............................................................................................................3

*Ferreira v. New York Daily News,* No. 09–CV–1520, 2009 WL 890577 (E.D.N.Y. Mar. 31, 2009) ......................................................................................................3

*Gaming Marketing Solutions, Inc. v. Cross*, No. 07 Civ. 4624(RJS), 2008 WL 858183, (S.D.N.Y. April 1, 2008) ...................................................................................................9

*Gardiner Stone Hunter Internat'l. v. Iberia Lineas Aereas de Espana, S.A.*, 896 F. Supp. 125 (S.D.N.Y. 1995) ...............................................................................................8

*Johnson v. Medisys Health Network*, No. 10-CV-1596 (ERK)(WP), 2011 WL 5222917, (E.D.N.Y. June 1, 2011) ....................................................................................................3

*Lieb v. American Motors Corp.*, 538 F. Supp. 127, 134 (S.D.N.Y. 1982) ....................................9

*Makife v. Federal Home Loan Mortgage Corp.*, No. 94 CIV. 4761 (HB), 1996 WL 383188 (S.D.N.Y. July 9, 1996) ........................................................................................3

*Pallian v. MetLife Bank, N.A.*, No. 12 Civ. 4639 (BMC), 2013 WL 3190327 (E.D.N.Y. June 20, 2013) ........................................................................................................3

*Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461-62 (2d Cir. 1998) ..................................4, 7

*Roberts v. Wells Fargo Bank, N.A.*, No. 4:12-CV-200, 2013 WL 1233268 (S.D. Ga. Mar. 27, 2013) .....................................................................................................7

*Scherer v. Equitable Life Assur. Society of the U.S.*, 347 F. 3d 394 (2d Cir. 2003) ........................8

*Szewczuk v. Stellar 117 Garth, LLC*, No. 09 Civ. 1570(PAC), 2012 WL 8141900 (S.D.N.Y. Sept. 4, 2012) ...................................................................................................9

**Statutes**

12 U.S.C. §1452..................................................................................................................1, 2

28 U.S.C. §1331.....................................................................................................................1

28 U.S.C. §1332.......................................................................................................1, 4, 7, 10

Fla. Stat. §501.204 ..............................................................................................................1, 2

Fla. Stat. §501.2075 .................................................................................................................9

**INTRODUCTION**

Defendants American Security Insurance Company ("American Security") and Assurant, Inc. ("Assurant") (collectively, the "Assurant Defendants"), submit this Memorandum of Law in Opposition to Plaintiff's Motion for Remand. Plaintiff's motion should be denied, for two separately dispositive reasons. First, the Court has federal question jurisdiction, pursuant to 12 U.S.C. §1452(f)(2) and 28 U.S.C. §1331, because the Federal Home Loan Mortgage Corporation ("Freddie Mac") is a party to this action. Second, the Court has diversity jurisdiction, pursuant to 28 U.S.C. §1332, because Assurant has been improperly joined in this action, there is complete diversity between Plaintiff and the remaining defendants, and the matter in controversy exceeds $75,000.

**FACTUAL BACKGROUND**

Plaintiff, Mr. Thomas M. Curtis, owns a residence (the "Residence") in West Palm Beach, Florida. (Complaint, ¶¶ 11-12.) Freddie Mac is the holder of a mortgage on the Residence (the "Mortgage"), and defendant Cenlar, FSB ("Cenlar"), is the servicing agent. (*Id.*, ¶ 18 - 19.) Beginning in October 2012, Cenlar repeatedly notified Mr. Curtis that the Mortgage requires him to maintain a hazard insurance policy on the Residence with coverage for wind damage. (*Id.*, ¶¶ 47, 56.) Mr. Curtis advised Cenlar that he refused to purchase such coverage. (*Id.*, ¶¶ 48, 53.) In March 2013, Cenlar (exercising the lender's rights under the Mortgage) purchased an insurance policy with wind coverage on the Residence (the "ASIC Policy") from defendant ASIC. (*Id.*, ¶¶ 69, 72.) The annual premium for the policy is $7,512.91. (*Id.*, ¶ 72.)

Plaintiff's Complaint alleges that the defendants' actions violated Section 501.204 of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§501.201–501.213 (2006) ("FDUTPA"). (*Id.*, ¶¶ 98, 102.) The Complaint demands damages of "not less than $50,000"

(*id.*, ¶ 100), as well as costs and attorneys fees under FDUTPA. (*Id.*, ¶ 103.) Section 501.2075 of the FDUTPA also allows for a civil penalty of "not more than $10,000" for each violation of Section 501.204. Additionally, Plaintiff seeks injunctive relief that would prohibit the defendants from taking action for Plaintiff's "failing to pay the insurance premiums" on the ASIC Policy. (*Id.* at p. 17.)

ASIC, which issued the ASIC Policy, is an indirect subsidiary of Assurant.[1] The Complaint does not allege that Assurant committed any act that would render it liable to Mr. Curtis, or that Assurant controls ASIC's day-to-day insurance operations. The Complaint asserts only that ASIC is a subsidiary of Assurant, and it alleges, "[u]pon information and belief," that Assurant knew of and "ratified" ASIC's "business arrangement" with Cenlar, and that this arrangement "resulted in profits for Assurant." (Complaint, ¶¶ 10, 93-94.)

## ARGUMENT

**A.  The Court Has Subject Matter Jurisdiction Over This Action Under 12 U.S.C. §1452(F)(2) And 28 U.S.C. §1331**

Defendant Freddie Mac is named as a party to each of the Complaint's five Causes of Action—including the Fourth and Fifth Causes of Action, which also purport to assert claims against the Assurant Defendants. Freddie Mac was created pursuant to a federal statute, 12 U.S.C. §1452. Section (f)(2) of that statute provides:

> [A]ll civil actions to which [Freddie Mac] is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value . . . .

Where, as here, Freddie Mac has been named as one of multiple defendants to a lawsuit, the suit presents a "federal question," and federal courts have subject matter jurisdiction.

---

[1]  Declaration of Jessica Olich, executed on May 2, 2013 (the "Olich Decl."), ¶ 10. (A copy of the Olich Decl. was attached to Assurant's Notice of Removal, Docket Entry No. 1.)

*Carrion v. 605 Realty Assocs. Ltd. Partnership*, No. 02 Civ. 2166(DC), 2004 WL 1562815, at *3 (S.D.N.Y. July 13, 2004) (federal court had jurisdiction over multi-defendant personal injury action, because "12 U.S.C. § 1452 . . . provides for original jurisdiction of district courts when Freddie Mac is a party"); *Pallian v. MetLife Bank, N.A.*, No. 12 Civ. 4639(BMC), 2013 WL 3190327, at *1 (E.D.N.Y. June 20, 2013) (federal court had jurisdiction over action against mortgage lender and others, because "one of the defendants that plaintiffs had sued was [Freddie Mac], which gave this Court federal question jurisdiction under 12 U.S.C. § 1452(f)"); *Makife v. Federal Home Loan Mortgage Corp.*, No. 94 CIV. 4761 (HB), 1996 WL 383188, *3 (S.D.N.Y. July 9, 1996) (in multi-defendant personal injury action, "this Court has subject matter jurisdiction over this case . . . because Freddie Mac is a party"). *See also Federal Home Loan Mtge. Corp. v. 333 Neptune Ave. Ltd. Partnership*, 201 F.3d 431, 431 (2d Cir. 1999) ("Because this action was brought by [Freddie Mac], jurisdiction is proper in federal court").

For this reason, all of the arguments presented in Plaintiff's Motion for Remand are beside the point. Even if this Court did not have jurisdiction by virtue of diversity of citizenship (and, as explained below, diversity jurisdiction is present here), Plaintiff's decision to include Freddie Mac as a defendant in his suit gives the Court original, federal question jurisdiction over all the claims in the Complaint. Plaintiff's motion must be denied on this basis alone.[2]

---

[2] That the Assurant Defendants' Notice of Removal did not cite the Court's federal question jurisdiction under 12 U.S.C. § 1452 is irrelevant here: "Where federal claims have been properly removed to federal court, they should not be remanded." *Johnson v. Medisys Health Network*, No. 10-CV-1596 (ERK)(WP), 2011 WL 5222917, at *3 (E.D.N.Y. June 1, 2011). *Accord Ferreira v. New York Daily News,* No. 09–CV–1520, 2009 WL 890577, at *4 (E.D.N.Y. Mar. 31, 2009) ("[T]he court has no discretion to remand federal claims but must exercise its jurisdiction over them"); *Dunlop v. City of New York*, No. 06-CV-433(KMK)JCF, 2006 WL 2853972, at *5 n.2 (S.D.N.Y. Oct. 4, 2006) ("where there is a federal question, the court is without discretion to remand"); *Adair v. Lease Partners, Inc.*, 587 F.3d 238, 241 (5th Cir. 2009) ("When the federal court has original subject-matter jurisdiction over a claim, that jurisdiction is

*(footnote continued on next page)*

**B.     Because Assurant Has No Real Connection To This Action,
         There Is Complete Diversity Of Citizenship Between The Parties**

The Court also has diversity jurisdiction over this action under 28 U.S.C. §1332. Plaintiff is a resident of the State of New York, while defendants are citizens of Delaware and/or Georgia (ASIC), New Jersey (Cenlar and Cenlar Agency, Inc.) and Virginia (Freddie Mac). Defendant Assurant is a Delaware corporation whose principal place of business is in New York (Olich Decl., ¶ 5), but Assurant is not a proper defendant in this action.

"A plaintiff may not defeat diversity jurisdiction by improperly joining a non-diverse defendant with no genuine connection to the matter." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011). Consequently, the naming of a non-diverse defendant does not preclude jurisdiction "if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court." *Id.* For example, where a complaint "fails to allege sufficient factual foundations" for a claim that a non-diverse defendant "exercised control" over the working conditions of one of its subsidiaries, or for "piercing the corporate veil between" the non-diverse defendant and its subsidiary, a district court may "correctly" deny a motion to remand that is based on the presence of the non-diverse defendant. *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461-62 (2d Cir. 1998).

In this case, the Complaint does not begin to establish any possibility of stating a valid claim against Assurant. Rather, as noted above, it merely asserts that ASIC is a wholly-owned subsidiary of Assurant (Complaint, ¶ 10; *but see* Olich Decl., ¶ 10); it alleges, "[u]pon information and belief," that Assurant knew of and "ratified" ASIC's "business arrangement" with Cenlar (*id.*, ¶ 93); and it further alleges, "[u]pon information and belief," that this

---

'not discretionary with the district court' and 'can neither be conferred nor destroyed by the parties' waiver or agreement'").

4

arrangement "resulted in profits for Assurant." (*Id.*, ¶ 94.)

Plaintiff's Motion for Remand does not attempt to argue that these allegations could establish a possible claim.[3] Such an attempt would, in any case, be unavailing: Employees of the Assurant Defendants have provided statements, under penalty of perjury, that Assurant is an indirect parent of ASIC, but it maintains separate books and records, it is not involved in ASIC's daily decision-making or business operations, and it does not participate in, direct or control ASIC's issuance of insurance policies.[4] Assurant is not an insurance company and does not issue or underwrite policies, collect premiums or enter contracts with mortgage lenders or servicers relating to lender-placed insurance. (Olich Decl., ¶¶ 6-9.) These facts fully establish that Assurant has been improperly joined.

In his moving papers, Plaintiff purports to respond to this evidence by presenting a handful of documents and making portentous claims about their significance, but none of Plaintiff's claims can withstand even a cursory examination.

Plaintiff contends that "the New York State Department of Financial Services deemed [Assurant] to be responsible for the acts of [ASIC] in New York." (Curtis Decl., ¶ 7.) In support of that claim, Plaintiff cites two documents: a Consent Order arising out an investigation by the New York State Department of Financial Services (the "Department") of Assurant and two of its subsidiaries, including ASIC (*id.*, Exhibit 3), and a press release that simply announced the Consent Order (*id.*, Exhibit 2).

---

[3]   *See* Declaration of Thomas M. Curtis in Support of Motion for Remand, executed on June 13, 2013, Docket Entry No. 22 (the "Curtis Decl."), ¶¶ 6-14.

[4]   Olich Decl., ¶¶ 10-12; Declaration of Ronald K. Wilson, executed on May 2, 2013 (the "Wilson Decl."), ¶¶ 5-6. (A copy of the Wilson Decl. was attached to Assurant's Notice of Removal, Docket Entry No. 1.)

Far from "deem[ing]" Assurant "to be responsible for the acts of" ASIC, however, the Consent Order expressly states that Assurant "is an insurance holding company," whose *subsidiaries* issue lender-placed insurance.  (*Id.*, Exhibit 3 at 1-2.)  It then explains that "Assurant is a party to this Consent Order *solely* for the purpose of binding" certain of its subsidiaries—*other than* ASIC—that are not otherwise parties to the Order.  (*Id.* at 7-8; emphasis added.)  Moreover, the Consent Order stipulates that the Department's "[f]indings and allegations have not been subject to an adjudicatory hearing or judicial process in which ASIC or [another subsidiary of Assurant] have had an opportunity to present evidence and examine witnesses."  (*Id.* at 23.)  In short, the Consent Order contains not so much as a *suggestion* of a finding that Assurant is "responsible for the acts of" ASIC.[5]

Plaintiff also cites what he identifies as the Declarations page of a residential policy, issued by ASIC to a client of Plaintiff's legal practice, and a letter to that client from ASIC, apparently relating to a different policy.  (Curtis Decl., ¶¶ 9-10, Exhibits 4 and 6.)  The first document invites the insured to submit questions by e-mail to "theprivacyoffice@assurant.com" (*id.*, Exhibit 4 at 3); the second includes the web address, "www.assurant.com," in ASIC's return address.  (*id.*, Exhibit 6 at 1.)  Plaintiff contends that these fact "demonstrate that Assurant administers substantive aspects of [ASIC]'s business" (*id.*, ¶10), but Plaintiff's contention is without merit.  ASIC is an insurance company within Assurant's Specialty Property division.  (Olich Decl., ¶ 10; Wilson Decl., ¶ 4; Curtis Decl., Exhibit 3 at 1-2.)  The fact that Assurant's various writing subsidiaries use the web site and a domain name that includes the name of their holding company corporate parent does not suggest in any way that

---

[5]   The press release to which Plaintiff cites has no legal significance, and is contradicted by the express terms of the Consent Order.

Assurant fails to observe corporate formalities with respect to the separate insurance operations of those subsidiaries.

Plaintiff also cites a "Notice and Claim Form" relating to the Department's settlement with Assurant and ASIC. (Curtis Decl., Exhibit 5.) This document does not refer to Assurant at all (although it does instruct claimants to mail the form to "Assurant Claims Administration"). Instead, it expressly discusses "a settlement between the [Department] and [ASIC] and American Bankers Insurance Company of Florida ("ABIC") [another subsidiary of Assurant] . . . concerning . . . insurance policies issued in New York State *by ASIC and ABIC*." (*Id.*; emphasis added.) Contrary to Plaintiff's assertion, there is nothing in this document to suggest in any way that "Assurant administers substantive aspects of [ASIC]'s business." (Curtis Decl., ¶ 10.)

In sum, Plaintiff has utterly failed to allege or demonstrate a factual foundation for his claims that Assurant conducts "substantive aspects" ASIC's business, or that it is otherwise liable for the acts of ASIC. Assurant has no genuine connection to this action, and its presence in Plaintiff's Complaint does not defeat diversity jurisdiction. *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d at 461-62; *see also Roberts v. Wells Fargo Bank, N.A.*, No. 4:12-CV-200, 2013 WL 1233268, at *6 (S.D. Ga. Mar. 27, 2013).

## C. The Remaining Conditions for Diversity Jurisdiction have been Satisfied

This Court has diversity jurisdiction over actions between citizens of different states, where the matter in controversy exceeds the sum or value of $75,000. 28 U.S.C. §1332. Plaintiff contends that "the maximum amount demanded" under his Third and Fourth Causes of Action "is the sum of $50,000." (Curtis Decl., ¶18.) In fact, Plaintiff's Complaint demands considerably more.

7

Plaintiff seeks compensatory damages of "not less than $50,000." (Complaint, ¶ 100.) In diversity cases, "the plaintiff's good faith demand, as set forth on the face of the complaint, determines whether the claim meets the jurisdictional minimum amount in controversy." *Barash v. Ford Motor Credit Corp.*, No. 06-CV-6497 (JFB)(ARL), 2007 WL 1791656, at *5 (E.D.N.Y. June 20, 2007), *citing Scherer v. Equitable Life Assur. Society of the U.S.*, 347 F. 3d 394, 397 (2d Cir. 2003). Accordingly, the matter in controversy in *this ˆcase* includes *at least* $50,000 in compensatory damages.

Plaintiff *also* seeks the attorneys' fees that are available under Section 501.2105 of the FDUTPA (*id.*, ¶ 102), and a "potential award of attorney's fees may be considered . . . when determining whether a case involves the jurisdictional minimum." *Gardiner Stone Hunter Internat'l. v. Iberia Lineas Aereas de Espana, S.A.*, 896 F. Supp. 125, 128 (S.D.N.Y. 1995). Attorneys' fees under the FDUTPA are calculated by "finding the reasonable number of hours expended on the litigation and multiplying that by the reasonable hourly rate." *Citibank (South Dakota) N.A. v. National Arbitration Council, Inc.*, No. 3:04-CV-1076-J-32MCR, 2007 WL 1231836, at *1 (M.D. Fla. April 26, 2007). The Court may also "add or subtract from the fee based upon . . . the results obtained." *Id.* (internal quotation marks omitted).

Before he could prevail on his claim, Plaintiff would have to have fully briefed *at least* the two motions that are currently pending—this motion and the Assurant Defendants' motion to dismiss. The remaining defendants have answered Plaintiff's Complaint, and Plaintiff indicated at the conference in this action on June 14, 2013, that he intends to seek extensive discovery, after which he must either try the case to a conclusion or prevail on a motion for summary judgment. It is likely, therefore, that the time necessary to prevail in this matter, when

added to the compensatory damages plaintiff has demanded, would make the amount in controversy exceed $75,000.

The Complaint *further* demands injunctive relief that would prohibit the defendants from taking action for Plaintiff's "failing to pay the insurance premiums" on the ASIC Policy. (Complaint, at p. 17.) "Where the plaintiff seeks injunctive relief, the value of his claim is generally . . . measured [for purposes of determining subject matter jurisdiction] by the extent of the impairment to be prevented by the injunction." *Gaming Marketing Solutions, Inc. v. Cross*, No. 07 Civ. 4624(RJS), 2008 WL 858183, at *3 (S.D.N.Y. April 1, 2008). *Accord Lieb v. American Motors Corp.*, 538 F. Supp. 127, 134 (S.D.N.Y. 1982) ("Where injunctive relief is sought, the value of the right protected or the injury avoided establishes the amount in controversy").

In this case, Plaintiff seeks an injunction that would prevent defendants from penalizing him for failing to pay the premium on the ASIC Policy—which currently amounts to $7,512.91 per year. (Complaint, ¶ 72.) That relief would be *in addition to* the award of compensatory damages and attorneys' fees that the Complaint demands. (*See id.* at 17-18.) Over the next several years, the value of the injunction to the Plaintiff (when added to compensatory damages and attorneys' fees) would be more than enough to establish that the amount in controversy exceeds $75,000.

Finally, a court may also "consider punitive damages in the amount-in-controversy calculation 'if punitive damages are permitted under the controlling law.'" *Szewczuk v. Stellar 117 Garth, LLC*, No. 09 Civ. 1570(PAC), 2012 WL 8141900, at *2 n.2 (S.D.N.Y. Sep. 4, 2012) (citation omitted). The FDUTPA authorizes an award of civil penalties of up to $10,000. Fla. Stat. § 501.2075.

In sum, Plaintiffs' Complaint puts "in controversy": (1) compensatory damages of "not less than $50,000"; *plus* (2) attorneys' fees, based on a reasonable hourly rate for the time it will take to brief two motions, exchange discovery with the defendants who have not moved to dismiss, and either try the case or prevail on a dispositive motion; *plus* (3) a permanent injunction that will save the Plaintiff at least $7,512.91 each year, for as long as the Mortgage remains in place; *plus* (4) civil penalties of up to $10,000 under the FDUTPA. The amount of the matter in controversy unquestionably exceeds $75,000. For this reason, because Assurant is not a proper party to this action, and because the other parties are diverse, this Court has subject matter jurisdiction under 28 U.S.C. §1332.

## CONCLUSION

Because the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1332 and 12 U.S.C. §1452(f)(2), the Assurant Defendants respectfully submit that Plaintiff's Motion to Remand should be denied.

Dated: July 5, 2013                                    Respectfully submitted,


By: *Robert D. Helfand*
JORDEN BURT LLP
Robert D. Helfand
Jorden Burt LLP
175 Powder Forest Drive
Suite 301
Simsbury CT 06089
Telephone: 860-392-5000
Facsimile: 860-392-5058

SULLIVAN & WORCESTER LLP
Andrew T. Solomon
Karen E. Abravanel
1633 Broadway
New York, New York 10019
Telephone: (212) 660-3000

Facsimile: (212) 660-3001

*Attorneys for Defendants American Security Insurance Company and Assurant, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on July 5, 2013 I caused true and correct copies the foregoing Memorandum of Law to be served by ECF filing on counsel for Cenlar, FSB, d/b/a Central Loan Administration & Reporting, Cenlar Agency, Inc. and Federal Home Loan Mortgage Corporation and by U.S. Mail and electronic delivery on plaintiff at the following address.

>Thomas M. Curtis, Esq.
>Law Office of Thomas M. Curtis
>1385 York Avenue, Suite 32 B
>New York, New York 10021
>thomasmcurtis@yahoo.com

>>*Robert D. Helfand*
>>Robert D. Helfand

263237