```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
THOMAS M. CURTIS,                        :
                                         :
                       Plaintiff,        :      13cv3007 (DLC)
           -v-                           :
                                         :      OPINION & ORDER
CENLAR FSB, d/b/a CENTRAL LOAN           :
ADMINISTRATION & REPORTING; CENLAR       :
AGENCY, INC., and FEDERAL HOME LOAN      :
MORTGAGE CORPORATION,                    :
                                         :
                       Defendants.       :
                                         :
---------------------------------------- X
```

APPEARANCES

For Plaintiff
Thomas M. Curtis, proceeding pro se
1385 York Avenue, Suite 32-B
New York, NY 10021

For Defendants Cenlar, FSB, Cenlar Agency, Inc., and Federal Home Loan Mortgage Corp.
Bradley L. Mitchell
485 Madison Ave., 20th Floor
New York, NY 10022

DENISE COTE, District Judge:

    This action arises out of a dispute about the terms of a mortgage. Pro se[1] plaintiff Thomas M. Curtis ("Curtis") filed a complaint ("Complaint") on April 4, 2013, seeking a declaration that under the terms of his mortgage, he was not required to purchase wind insurance. Curtis also seeks injunctive relief, damages, and attorneys' fees.

---

[1] Mr. Curtis is an attorney.

This Opinion addresses cross-motions for summary judgment and partial summary judgment.  On August 1, defendants Cenlar Agency, Inc. ("Cenlar"), Cenlar FSB (collectively "Cenlar"), and Federal Home Loan Mortgage Corporation ("Freddie Mac")(collectively "Defendants") moved for summary judgment pursuant to Rule 56, Fed. R. Civ. P.  The same day, Curtis moved for partial summary judgment on the First through Third Causes of Action set forth in the complaint ("Complaint"), which seek a declaration that Curtis was not required to purchase wind insurance under the terms of his mortgage, and monetary and equitable relief in connection with the forced-purchase of insurance.  For the following reasons, the Defendants' motion for summary judgment is granted and Curtis's motion for partial summary judgment is denied.

**BACKGROUND**

The following facts are undisputed unless otherwise noted. In December 2008, Curtis purchased a second home located at 326 Kenilworth Boulevard, West Palm Beach, Florida ("326 Kenilworth").  In connection with the purchase of 326 Kenilworth, Curtis executed a note ("Note") in the amount of $200,000 which was secured by a mortgage ("Mortgage") on the real estate and improvements at 326 Kenilworth.  The original lender was NJ Lenders Corp.  On January 21, 2009, co-defendant

Freddie Mac purchased the Note and Mortgage.  On August 12, co-defendant Cenlar became the servicer of the Mortgage.

The Mortgage provides in relevant part that:

> Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term 'extended coverage,' and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  The insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What lender requires pursuant to the preceding sentences can change during the term of the Loan.
> . . .
> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.

(Emphasis added.)

Concurrently with the purchase, Curtis acquired a homeowner's property insurance policy.  The policy excluded coverage for damage caused by wind.  Curtis renewed the policy every year thereafter with some modifications, but never obtained wind coverage.  Cenlar did not comment on the lack of wind coverage until October 2012.

In October 2012, Cenlar sent a letter to Curtis informing him that the terms of his Mortgage required him to purchase wind insurance.  In February 2013, Cenlar informed Curtis that if he did not obtain insurance, Cenlar would do so on his behalf.  Curtis did not purchase wind insurance.

Following Curtis's failure to purchase wind insurance, Cenlar purchased a wind insurance policy from Voyager Indemnity

Insurance Co. ("Voyager Policy") in 2013 on Curtis's behalf at an annual premium of $5,911.29, which was billed to Curtis's escrow account.  On April 18, 2014, Curtis paid the premium, but stated that he retained all rights to sue and recover the premium if he prevailed in court.  The home for which the insurance was purchased burned down on June 1.[2]  On June 9, Curtis informed Cenlar of the destruction of the dwelling, and of what he described as billing discrepancies.  Curtis stated that he would not make any more payments on his Mortgage until a court resolved the insurance issue.

Cenlar serviced the Mortgage according to the terms of the Interim Servicing Master Agreement ("Servicing Agreement"), which governs the relationship between servicers and Freddie Mac.  The Servicing Agreement directs servicers to comply with the provisions of Freddie Mac's Single Family Guide ("Guide").  The Guide specifically lists wind as a hazard for which insurance is required.

Wind insurance in Florida may be difficult to obtain due to the high rate of hurricanes.  In 2002, the Florida Legislature created Citizens Property Insurance Corporation ("Citizens") as

---

[2] There were two structures on the property, a main house and guest house.  There is some dispute as to whether all of the structures requiring insurance have been destroyed.  Defendant Cenlar has stated that it will not require wind insurance for any of the remaining structures.  To the extent that this issue is relevant, it is resolved in favor of the plaintiff for the purposes of this motion.

a not-for-profit insurer of last resort for homeowners who could not otherwise obtain insurance.  Fla. Stat. § 627.351(6).  Curtis has asserted that he could not have obtained wind insurance on his own for 326 Kenilworth due to the poor condition of the home, and has submitted expert reports, prepared in May 2014, to that effect.  For the purposes of this motion, it is assumed that he could not have purchased wind insurance from Citizens or another insurance provider.[3]

## PROCEDURAL HISTORY

Curtis filed the Complaint on April 4, 2013, against Cenlar, Freddie Mac, Assurant, Inc. ("Assurant"), and Assurant's wholly owned subsidiary American Security Insurance Co. ("American Security").  Curtis raised five separate claims.  The first three were brought against only Freddie Mac and Cenlar.  These claims sought a declaration that Curtis was not required to purchase wind insurance,[4] an injunction precluding Defendants from holding Curtis in default for failure to pay the insurance

---

[3] Defendants contend that expert reports submitted by Curtis indicate at most that the house may not have been insurable as of May 2014.

[4] In the Complaint, Curtis also argues that the purchase of the Voyager Policy was improper because it insured the property for more than the value of the remaining principal.  Curtis has not raised this argument either in support of his motion for partial summary judgment or in opposition to Defendants' motion for summary judgment.  Accordingly, it is waived.

premium for the Voyager Policy,[5] and damages related to the purchase of the Voyager Policy by Cenlar.  The fourth and fifth causes of action were brought against all defendants under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  Fla. Stat. §§ 501.201-501.23.  The fourth cause of action alleges that the price of the Voyager Policy was inflated and in violation of the FDUTPA.  Id. § 501.204.  The fifth cause of action requests attorneys' fees under the FDUTPA.  Id. § 501.2105.

On June 7, 2013, defendants American Security and Assurant moved to dismiss the FFUTPA causes of action filed against them.  That motion was granted on November 11.  Curtis v. Cenlar FSB, 13cv3007 (DLC), 2013 WL 5995582, at *1 (S.D.N.Y. Nov. 12, 2013).

On August 1, 2014, Defendants moved for summary judgment on all five causes of action.  The same day, Curtis moved for partial summary judgment on the first three causes of action.  Curtis essentially argues that the Mortgage does not require him to purchase wind insurance and, even if it did, Florida law will not require a borrower to purchase insurance that is "unobtainable."  Defendants argue that the FDUTPA claims are

---

[5] At the time the Complaint was filed, Curtis had yet to pay the premium for the Voyager Policy and requested injunctive relief precluding Defendants from holding him in default.  On April 18, Curtis paid the premium to prevent the possibility of being found in default.  In doing so, Curtis reserved the right to recoup the payment should he prevail in court.

both barred as a matter of law, and that there are no facts in the record to support the claims.  Defendants have also raised mootness concerns as to the claims for declaratory and injunctive relief, and assert that claims against Freddie Mac are barred by the Merrill doctrine.  See Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380 (1947).  Because the purchase of wind insurance was proper, the Court need not address the issue of mootness or the Merrill doctrine.

**DISCUSSION**

Summary judgment may not be granted unless the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986); Azrielli v. Cohen Law Offices, 21 F.3d 512, 517 (2d Cir. 1994) ("[T]he court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.").  When the moving party has asserted facts showing that the nonmovant's claims cannot be sustained, the

7

opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of his pleadings.  Rule 56(e), Fed. R. Civ. P.  See also Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).  "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment."  Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted).

When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence on an essential element of the nonmovant's claim.  Celotex, 477 U.S. at 322-23; see also Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009).  In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment.  Celotex, 477 U.S. at 322-23.

**1. Mortgage Interpretation**

Curtis first contends that the Mortgage does not require him to purchase wind insurance.  In interpreting contracts, Florida courts follow generally accepted rules of construction, meaning that contracts are "construed according to their plain

meaning . . . ."[6]  Pfenzer v. Transportation Ins. Co., 29 So.3d 1000, 1005 (Fla. 2010).  When a contract term is inserted for the benefit of one party, it should be treated as if it was written by the benefited party and ambiguities are resolved in favor of the other party.  See Clay v. Girdner, 103 Fla. 135, 145 (1931); Capital City Bank v. Hilson, 59 Fla. 215, 219 (1910).  The contract, however, must actually be ambiguous to find in favor of the non-benefited party on this basis.  Pfenzer, 29 So.3d at 1005.  Furthermore, "[w]hile ambiguous language is to be construed against the person using it, [] it should be given the meaning and effect that will be in accord with the object in view."  Brown v. Beckwith, 60 Fla. 310, 312 (1910).  Even in the context of a mortgage, bad bargains will generally be enforceable provided they are otherwise legal.  Clay, 103 Fla. at 141.

In relevant part, the Mortgage states:

> Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. . . .  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.
> . . .
>      If Borrower fails to maintain any of the coverages

---

[6] Curtis argues that Florida law controls this issue.  Defendants have not disputed that assertion.  The Mortgage states that it is to be governed by federal law and the law of the jurisdiction where the property is located.  Accordingly, Florida law will be applied here.

>    described above, <u>Lender may obtain insurance coverage, at Lender's option and Borrower's expense</u>.

(Emphasis added.)

In order for the forced-purchase of wind insurance to be proper under the Mortgage, two requirements must be met.  First, Freddie Mac, and Cenlar as its agent, must be able to exercise the rights of the Lender as described in the Mortgage.  Second, wind must be included in the Mortgage as "extended coverage" or as a "hazard . . . for which the Lender requires insurance."  If both of the requirements are met, Cenlar was entitled, under the terms of the Mortgage, to obtain coverage at Curtis's expense.  Each requirement will be addressed in turn.

The "Lender" is listed in the Mortgage as NJ Lenders Corp.  The Mortgage does not explicitly provide that the Lender's rights under the Mortgage may be exercised by a successor.  The Mortgage does provide, however, that it may be "sold one or more times without prior notice to the Borrower" and makes other references to the "Lender's successors and assigns."  Taken as a whole, the Mortgage anticipates that the Mortgage may be sold and the loan servicer, who acts on behalf of the Lender, may change.  The Mortgage assumes that the rights of the Lender will travel to its successors, and it would be illogical to assume otherwise.  No party has argued that the term "Lender" as used in the Mortgage does not apply to Freddie Mac.

10

The next issue is whether the Mortgage's provision that "hazards included within the term 'extended coverage,' and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance" applies to wind insurance. "Extended coverage" refers to "[a] policy provision that insures against hazards beyond those covered (or excluded) in the basic policy." Black's Law Dictionary (9th ed. 2009). A standard homeowner's policy in Florida will provide coverage for basic perils, including fire, extended coverage, vandalism, and theft. Wind peril is included within the definition of "extended coverage." Plaintiff's own expert report concedes that the term "extended coverage" encompasses wind insurance.

Furthermore, wind insurance is also encompassed by the Mortgage provision referring to "any other hazard . . . for which the Lender requires insurance." The word "hazard" refers to a "danger or peril" and in the insurance context specifically refers to the "risk or probability of loss." Black's Law Dictionary (9th ed. 2009). The Mortgage is worded broadly to include any and all "hazards." At the very least, this provision unambiguously refers to perils that commonly cause damage to property. Wind is undoubtedly such a peril, particularly in Florida. See Fla. Stat. § 627.351(6) (establishing an insurer of last resort after national insurance carriers stopped offering coverage due to high rates of

11

hurricane damage); Fla. Stat. § 627.712 (requiring wind insurance as part of a homeowner's policy unless the property is located in an excluded area); see also 12 C.F.R. § 1024.31 ("Hazard insurance means insurance on the property securing a mortgage loan that protects the property against loss caused by fire, wind, flood, earthquake, theft, falling objects, freezing, and other similar hazards for which the owner or assignee of such loan requires insurance."). Wind is thus a hazard for which the Lender may require insurance.

The Lender, Freddie Mac, required wind insurance. The Servicing Agreement provides that Cenlar will service the Mortgage on Freddie Mac's behalf. Among other things, the Servicing Agreement requires that Cenlar service the Mortgage in conformity with the Guide. The Guide states that, "[f]or as long as Freddie Max owns an interest in a Mortgage, the [] Servicer must ensure that the Mortgaged Premises are covered by insurance meeting [specified] requirements." The Guide further specifies that:

> [I]nsurable improvements on the Mortgaged Premises must be insured for loss or damage from . . . windstorm . . . . If any of the preceding perils (e.g., windstorm) is excluded from the primary insurance policy, coverage of the excluded peril must be picked up through a secondary insurance policy
> . . . .

(Emphasis added.)  Freddie Mac thus exercised its rights under

12

the Mortgage to require wind insurance.

Because the Lender may require wind insurance under the Mortgage, and did require such insurance, Cenlar, as the Lender's agent, was permitted to obtain insurance on Curtis's behalf when Curtis failed to do so.  Curtis is not entitled to damages relating to the purchase of insurance or injunctive relief precluding Defendants from holding him in default for failure to pay for the cost of the premium.  Similarly, Curtis's request for a declaration that he was not required to purchase wind insurance is denied.

Curtis's main argument is that, as a matter of law, the Mortgage cannot be read to require insurance that is "unobtainable" by the borrower.  This argument fails.  In making this argument, Curtis relies primarily on Clay v. Girdner, 100 Fla. 135 (1931).

Clay concerned a mortgage where the borrower was required to insure his property for no less than $37,500.  Id. at 139. The borrower was unable, despite making every effort to increase the amount of coverage, to insure the property for that amount. Id.  The Florida Supreme Court found that the lender could not foreclose on the property or accelerate the debt for a failure to obtain the requisite level of insurance.  Id. at 145.

In relevant part, Clay states:

> If the defendant, after repeated trials, was unable to induce any company to insure the property in the amount provided by the mortgage, would such failure constitute such a default as would give legal authority to the complainant to declare all amounts due and proceed to foreclose?
>   Such a clause having been inserted for the benefit of the mortgagees it should, under the general rule, be strictly construed against them. It would seem therefore that any covenant in a mortgage to keep the property insured in a given amount, in the absence of a clear provision to the contrary, should be construed to mean that the mortgagor will procure it if obtainable and that such covenant is contingent upon the ability to procure the stated amount.

Id. at 145.

The holding of Clay is inapplicable to this case. Clay dealt with an acceleration clause that was triggered when the borrower defaulted by failing to obtain insurance after repeated attempts to do so. This is not the situation here. Curtis has not submitted any evidence indicating that, following Cenlar's request that he obtain wind insurance in October 2012, he took any steps to obtain such insurance or seek out an evaluation by Citizens to determine his eligibility for wind insurance.[7] But, more significantly, Cenlar did not threaten to foreclose on Curtis's property or accelerate the mortgage for failure to purchase insurance. Rather, Cenlar obtained a policy at Curtis's expense. Florida law does not preclude a lender from

---

[7] The allegations in the Complaint indicate that Curtis never sought an evaluation for wind insurance following Cenlar's letter in October 2012. His expert reports addressed to the insurability of the house were not prepared until May 2014.

purchasing insurance for a borrower when the borrower fails to do so.  While Florida law does, as plaintiff correctly notes, permit wind insurance to be excluded from standard policies in particular areas, Fla. Stat. Ann. § 627.712, this has no bearing on whether a mortgage may require a supplemental policy that covers wind peril and Curtis has not cited any law suggesting otherwise.

Curtis also contends that the Servicing Agreement and Guide do not modify the terms of his Mortgage, and thus the requirement that properties covered by the Guide be insured against wind damage does not apply to him.  This argument misses the mark.  The Mortgage itself, as described above, permitted the Lender to dictate the types of insurance for the property.  The Servicing Agreement and Guide are evidence that the Lender, Freddie Mac, did require wind insurance.  Freddie Mac was entitled, under the terms of the Mortgage, to require and obtain such insurance.  That Freddie Mac elected to exercise this right does not reflect any alteration to the terms of the Mortgage.

**II. Florida Deceptive and Unfair Trade Practices Act**

Curtis contends that the claims under the FDUPTA survive, at least as to Cenlar.  Summary judgment in Cenlar's favor, however, is appropriate because Curtis has not provided evidence to raise a genuine issue of material fact requiring resolution at trial.

Curtis has not produced any evidence whatsoever to support his claims under the Florida Deceptive and Unfair Trade Practices Act.  The basis for these claims, as outlined in the Complaint, was the existence of a relationship between Cenlar and Assurant that led to the inflation of the cost of insurance.  Curtis has not produced any evidence to support these allegations.  In response to Defendants' motion for summary judgment, Curtis takes no position as to whether the claim is barred as a matter of law as to Freddie Mac and states only that the claim is not barred as to Cenlar.  Accordingly, Curtis has failed to raise a genuine issue of material fact and summary judgment is entered in Defendants' favor.

## CONCLUSION

The plaintiff's August 1, 2014 motion for partial summary judgment is denied and Defendants' August 1, 2014 motion for summary judgment is granted in full.  The Clerk of Court shall enter judgment for the Defendants and close this case.

Dated:    New York, New York
          November 5, 2014

                                  _____
                                  DENISE COTE
                                  United States District Judge